## Commonwealth ex rel. Gregory, Appellant, *v.* Gregory.

Argued November 11, 1958.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

Before KNIGHT, P. J.

*Richard W. Hopkins,* with him *Raymond M. Seidel,* and *High, Swartz, Childs & Roberts,* and *White, Williams & Scott,* for appellant.

*James P. Geoghegan,* with him *Fox, Differ & Honeyman,* for appellee.

OPINION BY ERVIN, J., December 9, 1958:

This is an appeal from an order of the court below in banc modifying an order of the hearing judge and awarding custody of two minor children to the appellee. Doris Baker Gregory, the appellee, and Kendall D. Gregory, appellant, were married on April 8, 1943. Two children were born to the union: Grier Joseph on May 22, 1944 and Thomas Decatur on October 1, 1946. On March 18, 1953, when the couple were living with their children in Gulfport, Mississippi, the appellee obtained an absolute divorce in which it was provided that she was to have custody of the boys for nine months of the year and the father was to have custody for the remaining three months of the year. On October 1, 1954 the Mississippi court modified the decree by awarding the custody of the children to the father for nine months and to the mother for three months

of each year. On May 23, 1955 the Mississippi court again modified its decree and awarded custody equally between the parents, giving the mother custody from June 1 to December 1 of each year and custody to the father from December 1 to June 1 of each year *"until further order of this Court."* (Emphasis added) This decree also provided that the children were to be enrolled by the mother in the Bayou View School in Gulfport, Mississippi. In November 1956 the mother filed a petition in the Mississippi court seeking a further modification of the custody arrangement. In July 1957 the mother brought the boys to Pennsylvania, taking up residence in Springfield Township, Montgomery County, Pennsylvania, and enrolling the children in the schools of that township. On October 1, 1957 the mother filed a petition in the Montgomery County court seeking custody of the boys for nine months of the year in order that the boys might spend a full school year in one school without interruption. On December 13, 1957 the father filed a petition in the Montgomery County court seeking a decree to compel the mother to deliver the children into the custody of the father. Both of these matters came on to be heard before President Judge HAROLD G. KNIGHT who, on December 2, 1957, dismissed the petition of the mother for custody and on January 2, 1958 remanded the custody to the mother and ordered that they were to be delivered to the father on February 1, 1958. The order also provided: "The father to give bond in the sum of $2000. conditioned on his returning the infant relators to their mother on June 1, 1958 in accordance with the decree of the Mississippi court dated November 11, 1957." The Mississippi court on November 11, 1957 had further modified its order and gave custody of the boys to the father from November 11, 1957 to June 1, 1958 and for a period from September 1 to

May 31 in each and every year until further order of the court. The mother was awarded custody from June 1 to August 31 of each year until further order of the court. On January 10, 1958, four days after the expiration of President Judge KNIGHT's term of office, the mother filed exceptions to both decrees theretofore entered by President Judge KNIGHT, which exceptions were subsequently heard before the court in banc of Montgomery County, of which President Judge KNIGHT was no longer a member. On April 9, 1958, in an opinion by Judge DAVID E. GROSHENS for the court in banc, the custody of the two boys was awarded to the mother from the date of the decree until June 20, 1958 and for a period beginning September 1, 1958 and continuing through June 20, 1959 and for a similar period in each and every year thereafter except for the Christmas holidays, until further order of the court. The court also awarded custody of the children to the father for a period from June 20, 1958 to August 31, 1958 and for a similar period in each and every year thereafter until further order of the court. The father was also given custody from December 23, 1958 to December 31, 1958 inclusive and for a similar period in each and every year thereafter. The father appealed.

The appellant contends that it was error for the court in banc to fail to give full faith and credit to the decree of the Mississippi court, where the hearing judge found that there was no change in circumstances since the entry of its prior decree. Our court has recently considered this question in *Com. ex rel. Schofield v. Schofield*, 173 Pa. Superior Ct. 631, 641, 98 A. 2d 437, where we quoted with approval the language of our Supreme Court, as follows: " 'In our opinion, the true view of the question is that where the custody of a child has been passed upon by the proper court in one

jurisdiction who has heard the case and made an adjudication incorporating therein certain findings of facts, the facts so found should as to the parties participating therein be treated as established and not open to question in another jurisdiction, especially where the parties so appearing neglected to avail themselves of the statutory right of appeal. Upon those facts and any others that may be presented, the court, where the matter is again brought up, must determine the ultimate question of the best interests of the child. Whether the same conclusion should be reached, even on the same facts, depends on the judgment of the court re-hearing the case'." See also *Com. ex rel. Maines v. McCandless*, 175 Pa. Superior Ct. 157, 161, 103 A. 2d 480. It should also be noted that while the Mississippi court purported to act upon the petition of the mother, filed in November 1956, seeking a modification of the former order, it did not do so until November 11, 1957. No hearing had ever been held upon her petition to modify when she and the boys were present. At the time of the Mississippi court's action neither the mother nor the boys were in the State of Mississippi. It appears that the Mississippi court's action was taken upon the request of the father in the absence of the mother and the children and only after the proceedings had been instituted by the mother in the Pennsylvania court. The accepted rule is that jurisdiction follows either the domicile of the child or the residence of the child: *Com. ex rel. Scholtes v. Scholtes*, 187 Pa. 22, 25, 142 A. 2d 345. The residence of the children was in Pennsylvania at the time of the institution of the proceedings for custody in Montgomery County. The parents had been divorced and by decree of the Mississippi court the custody of the children had been divided between the divorced parents.

The appellant also argues that the court in banc erroneously modified the order of the hearing judge. While it is true that the findings of the hearing judge on questions of fact, particularly where the credibility of witnesses is concerned, are entitled to be carefully considered, this rule does not apply in favor of deductions or inferences which are made by the trial judge from the facts which he has found. The conclusions of the trial judge, being no more than his reasoning from the facts, are always reviewable, either by the court in banc or by an appellate court: *Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542, 151 A. 15; *Blue Ridge Metal Mfg. Co. v. Northern Pa. Power Co.,* 327 Pa. 424, 432, 194 A. 559; *Andrikanics v. Andrikanics,* 371 Pa. 222, 226, 89 A. 2d 792; *Com. ex rel. Harry v. Eastridge,* 374 Pa. 172, 177, 97 A. 2d 350; *Cameron Estate,* 388 Pa. 25, 28, 130 A. 2d 173. Certainly the wife, aggrieved by the order of the hearing judge, had the right to file exceptions thereto and have the matter passed upon by the court in banc: *Sigel Appeal,* 381 Pa. 603, 606, 114 A. 2d 117; *Kensington Club Liquor License,* 164 Pa. Superior Ct. 401, 409, 65 A. 2d 428. Where there are several judges constituting a court in banc, the opinion of the majority is the ruling of that court: *Myers v. Consumers' Coal Co.,* 212 Pa. 193, 200, 201, 61 A. 825; *Independent Order, Sons of Italy, Liquor License Case,* 161 Pa. Superior Ct. 448, 450, 55 A. 2d 546; *Irwin Boro Annexation Case,* 165 Pa. Superior Ct. 119, 124, 67 A. 2d 757. The death, disqualification or absence of a judge will not deprive the surviving or remaining judges of authority to hold court and transact the business of the court: *Com. v. Petrillo,* 340 Pa. 33, 48, 16 A. 2d 50. All of the essential facts in the present case are well established and there is no real problem with respect to credibility of witnesses: *Easton v. Koch,* 152 Pa. Superior Ct. 327, 334, 31 A.

2d 747; *Kaufmann v. Kaufmann,* 166 Pa. Superior Ct. 6, 10, 11, 70 A. 2d 481. Both parents were proper persons to have custody of their children and both homes were adequate. The real difference between the hearing judge and the court in banc occurred in the conclusions which were drawn from those facts. At the time of the hearings, both boys had spent some months in the Springfield Township schools in Montgomery County, Pennsylvania. They also had previous experience with the schools in Gulfport, Mississippi. They clearly stated to the judge in chambers and in open court that they preferred the Pennsylvania schools. The hearing judge gave this testimony very little weight. In this connection he said in his opinion: "We have never looked with favor upon calling children to testify in a custody case irrespective of their age. The boys both said that they have affection and respect for their father but that they would prefer to remain with their mother nine months of the year. The mother was in the Court room when this testimony was given. The father was not. Under these circumstances not too much weight must be given to the wishes of these young boys." It should be remembered that at the time of the hearing these boys were 13 and 11 years of age and are now 14 and 12 years of age. The record shows that they had considerable travel experience and their testimony indicates that they are intelligent. We do not believe that the hearing judge properly considered their desires. In *Com. ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 176, 116 A. 2d 336, we said: " ' Although the expressed wishes of the children are not controlling, . . . they constitute a factor which should be carefully considered.' Com. ex rel. Goldbaum v. Goldbaum, 161 Pa. Superior Ct. 131, 135, 53 A. 2d 746.

"In Com. ex rel. Stevens v. Shannon, 107 Pa. Superior Ct. 557, 563, 164 A. 352, we said: 'Even the preference expressed by a child must be based on good reasons, and the child's maturity and intelligence must be considered.' See also Com. ex rel. Brown v. Lane, 90 Pa. Superior Ct. 350, 352; Com. ex rel., Appellant, v. Tyrrell, 115 Pa. Superior Ct. 385, 386, 387, 175 A. 723; Com. ex rel. Conway v. Preston, 148 Pa. Superior Ct. 182, 186, 24 A. 2d 772.

"The law does not set an age over which the wish of the child is to be respected. The intelligence of a child is important and the wish should be based on real reason. 22 Temp. L.Q. 297."

See also *Cochrane Appeal,* 394 Pa. 162, 145 A. 2d 857, where the Supreme Court said: "The wishes of an intelligent child of 14 years or over is an important factor in determining custody."

Whether a child likes or dislikes a school is very important. A child who likes his school is more likely to get along well than one who does not. This in turn has a great effect upon the ultimate welfare of the child. The paramount consideration in these cases is the welfare of the child: *Com. ex rel. Mitchell v. Mitchell,* 186 Pa. Superior Ct. 347, 142 A. 2d 304. In our opinion, the court in banc gave proper effect to the boys' desires. We also approve the reasoning of the court in banc as follows: "The first reason is the present composition of the household of Dr. Gregory, made up of himself, his new wife, two children of the new wife by a former husband, and two children of Dr. Gregory by his new wife. If the boys enter this already complex relationship we would have the following situation; to wit: three sets of two siblings each; two sets with Dr. Gregory as a common father, of which one set is from Mrs. Gregory, the petitioner, and the other set from the present Mrs. Gregory; two

sets with the present Mrs. Gregory as a common mother, of which one set is by Dr. Gregory, and the other set by her first husband; one set strangers in blood to Dr. Gregory, and one set (the boys) strangers in blood to the present Mrs. Gregory. In other words the present Mrs. Gregory would preside over a household of six children, four of whom are of her blood, and two of whom (the boys) are strangers to her blood. There is little in the record about the ages or sex of the four children already in the household. Our Court has not had the benefit of seeing the present Mrs. Gregory or of having her examined and cross-examined. Our Court cannot form a judgment on her capacity to preside fairly over this lineal hodge-podge of six children, where not only sibling rivalries, but half-blood rivalries as well, will tend to disrupt harmony and to develop antagonisms in which the parents may consciously or unconsciously take sides to the detriment of the development of youthful personalities and character."

Order affirmed.