Commonwealth ex rel. Golembewski *v.* Stanley, Appellant.

Argued December 16, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*John E. Landis,* with him *Landis & Williams,* for appellant.

*Peter J. Cianci,* with him *Wisler, Pearlstine, Talone & Gerber,* for appellee.

OPINION BY WRIGHT, J., March 18, 1965:

The question presented by this appeal is whether the putative father of an illegitimate child in the mother's custody may be awarded the privilege of visiting the child. The father instituted a habeas corpus pro-

ceeding in the court below. After taking testimony, the hearing judge granted the father visitation privileges on two days of each week. The mother has appealed.

The record discloses that the child was born on March 24, 1963, and bears the name Joseph Stanley. The child's mother, Mildred Stanley, is a single woman of mature years and has one other child, an illegitimate daughter aged four years. The mother is concededly a fit person to have custody. She objects to visits by the putative father because they create "an intolerable condition". Walter Golembewski, the child's father, is a single man aged 42 years. He resides with and supports his unmarried sister and their elderly mother, a mental incompetent. He informed the child's mother that he could not marry her "because of his mother". He refused to permit use of his name on the child's baptismal certificate. Following the institution of a fornication and bastardy proceeding, he insisted upon blood tests. He then acknowledged paternity, entered a plea of guilty, and was ordered to pay support for the child in the amount of $12.00 per week. He asserts that this gives him the "right" to visit the child.

The learned hearing judge took the position that visitation privileges are a form of limited custody, and based his decision on the proposition that the putative father of an illegitimate child is generally entitled to its custody as opposed to all but the mother. If our decision involved merely an appraisal of the exercise of discretion by the court below, we would hesitate to interfere. It is our view, however, as a matter of legal policy, that it is detrimental to the welfare of an illegitimate child in the mother's custody to award visitation privileges to the putative father.

The question here involved has not been the subject of appellate consideration in this Commonwealth. We have examined the cases from other jurisdictions cited in appellee's brief[1] and, so far as they cannot be distinguished, we do not view them as controlling. We are also not unaware of the statement in C. J. S., Bastards, Section 17, that a putative father "has a legal right to reasonable access to his bastard child where he contributes to its support". We prefer to adopt the conclusion reached in the lower court case of *Commonwealth ex rel. v. Spano*, 68 Pa. D. & C. 248, wherein Hon. NOCHEM S. WINNET made the following pertinent statement: "Conceivably where the child has lost its mother a putative father may have a superior right over a stranger. Here the mother is alive. It would be detrimental to the child's welfare to continue petitioner's interest. It can only serve as a reminder to him of his unfortunate status . . . It is for the best interest and permanent welfare of the child to terminate now, while the child is yet at a very tender age, all contacts between him and petitioner".

An illegitimate child is considered in law to be the child of its mother and not of its father: Act of April 24, 1947, P. L. 80, Section 7, 20 P.S. 1.7. The consent of a putative father who had acknowledged the child was at one time required in an adoption proceeding: Act of April 4, 1925, P. L. 127. However, that statute was amended by the Act of June 30, 1947, P. L. 1180, 1 P.S. 2, to read as follows: "In the case of an illegitimate child, the consent of the mother only shall be necessary". While our cases are to the effect that the putative father is entitled to custody of his illegitimate child as against all but the child's moth-

---

[1] *Baker v. Baker*, 81 N. J. Eq. 135; *Bagwell v. Powell*, 99 So. 2d 195; *Strong v. Owens*, 205 P. 2d 48; *Ex parte Hendrix*, 100 P. 2d 444.

er[2], the mother has the right to the child's custody as against the putative father: *Commonwealth ex rel. Kevitch v. McCue,* 165 Pa. Superior Ct. 49, 67 A. 2d 582. We are not impressed with the argument that the father should have limited custody because he is contributing support. The question of support and the question of custody are separate and distinct problems: *Commonwealth v. Mexal,* 201 Pa. Superior Ct. 457, 193 A. 2d 680.

If this controversy involved a legitimate child, the court below would of course be authorized to grant visitation privileges to the father. Cf. *Commonwealth ex rel. McKee v. Reitz,* 193 Pa. Superior Ct. 125, 163 A. 2d 908. An illegitimate child is in a different situation. He does not bear his father's name. Legally he is cut off from his father. Visitation by the father can only serve to remind the child of his unfortunate status. Our primary concern is not with any so-called "right" of the father. The focus of our attention must be on the welfare of the child. An illegitimate child has a problem of adjustment under the best of circumstances. We are firmly of the opinion that the child's illegitimacy should not be constantly emphasized by permitting the father to have visitation privileges.

Order reversed.

ERVIN, P. J., would affirm on the opinion of Judge J. WILLIAM DITTER, JR.

---

[2] *Moritz v. Garnhart,* 7 Watts 203; *Pote's Appeal,* 106 Pa. 574; *Commonwealth ex rel. Human v. Hyman,* 164 Pa. Superior Ct. 64, 63 A. 2d 447.