Commonwealth ex rel. Gifford, Appellant, *v.* Miller.

Argued September 13, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Anna I. Vadino,* with her *Vadino, Auerbach & Vadino,* for appellant.

*Arthur Levy,* with him *McClenachan, Blumberg & Levy,* for appellee.

OPINION BY JACOBS, J., November 14, 1968:

This child custody case involves a contest between the mother of an illegitimate child and the putative father's parents for custody of a boy who is two years and four months old. The lower court gave custody to the putative father's parents. We reverse.

Ronald Gifford, the subject of this controversy, was born March 13, 1966, to Mildred Gifford, an unmarried 21 year. old woman. The child remained with his

mother until April 1, 1968, when the mother entered a hospital for surgery. The putative father, Ronald Miller, at that time offered to take care of the child until the mother recovered. About two weeks later, when she was out of the hospital, the mother requested the return of her child. The putative father refused and shortly thereafter turned the child over to his parents, William and Irene Miller. The putative father and his parents refused to let the mother see the child, and on June 20, 1968, she petitioned for a writ of habeas corpus. After two hearings the court below, on July 17, 1968, gave custody of Ronald Gifford to William and Irene Miller with visitation privileges to the mother. The mother appeals from that order.

The appellant is also the mother of two other illegitimate children; Rebecca Ann, age six, and David, age four. Rebecca Ann was adopted by strangers to this proceeding. David lives with his mother. Until April 1, 1968, the petitioner and David and Ronny, as Ronald is known, lived with Mr. and Mrs. Boroi at 1203 Parkins Street, Chester, Pa. The Borois have three children of their own, so a total of eight people are living in the house. The house is small and David and Ronny sleep in a room together. The house has a small back yard in which there is a gym set, a rocking horse, a sand box, a picnic table and a small swimming pool. Petitioner stated that she goes out on Saturday night to a local tavern and spends the evening there. On every occasion she leaves her children with either Mr. or Mrs. Boroi. The appellees offered testimony to the effect that appellant also goes out on Friday night. Sometimes she is accompanied by Mrs. Boroi. There was no testimony that the mother ever left the children alone at night. Mrs. Boroi testified that appellant does not drink or have boyfriends at the house and there was no testimony that appellant had done any-

thing of an immoral nature since Ronny's birth over two years ago. All parties testified that Ronny was well dressed, clean and appeared to be well. He has had no serious illnesses. There was testimony that on one occasion when Mr. Boroi was left with the children he had had too much to drink. Testimony showed that once in the daytime appellant left Ronny in front of the house unattended, that she left him in the sun longer than Mrs. Boroi thought proper and did not keep the boy's room clean and properly ventilated. About three years before the hearings the appellant was accused of shoplifting but the matter never proceeded to prosecution. More recently she had an altercation with a neighbor's child that resulted in her going before a magistrate where the matter was settled.

There was no testimony that appellant ever abused Ronny and both children were admittedly well dressed, healthy and well fed. However, there was testimony to the effect that appellant showed no affection toward David and struck him on a number of occasions when he did not obey. In the opinion of one witness who had David for two weeks while the mother was in the hospital, David spoke better and seemed less nervous when she returned him to his mother.

Appellant does not work, but receives public assistance which she turns over to the Borois for keeping her and her children. She should also be receiving the sum of $10.00 per week from the putative father, Ronald Miller, for the support of Ronny. In June, 1966, a support order was entered against him in that amount. Despite the fact that the father was making almost $100 a week and was single he was $200 in arrears on the order in December, 1967, and it was necessary to attach his wages. He admits that his last arrearage was $165, but the record does not disclose the presence or absence of arrearages on April 1, 1968.

William and Irene Miller live in the country in a four bedroom house. He is fifty-six years old and she is fifty. Ronny has a bedroom to himself. Mrs. Miller has quit her job so that she can take care of Ronny, and their daughter, Carol Ann, age nineteen, lives with them and helps to supervise Ronny. The putative father, Ronald Miller, who works at Reynolds Metals and does not live with his parents, has an apartment of his own.

In its opinion in support of the order awarding custody to the putative father's parents, the court below determined that the best interest of the child, present and future, required the order. This determination was based on the following findings and conclusions: (1) that the mother is unable without assistance to properly raise the child or provide a sense of security for him and would neglect him without the Borois; (2) that the mother is irresponsible and without moral character; (3) that her disciplinary and educational methods as applied to David have adversely affected David and such conduct might be applied to Ronny in the future; (4) that William and Irene Miller have great love for the child as well as better physical facilities and surroundings; (5) that Mrs. Miller terminated her employment to take care of the child; and (6) that the natural father is interested in the child's well-being.

The scope of our review is quite broad under Sec. 1 of the Act of July 11, 1917, P. L. 817, 12 P.S. §1874, which directs us to "consider the testimony and make such order upon the merits of the case . . . as to right and justice shall belong." This review was limited to some extent in *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350 (1953), which holds that we cannot nullify the fact-finding function of the hearing judge but in matters of credibility of witnesses

and the weight to be given their testimony we must accept his findings. However, "this rule does not apply in favor of deductions or inferences which are made by the trial judge from the facts which he has found. The conclusions of the trial judge, being no more than his reasoning from the facts, are always reviewable, either by the court in banc or by an appellate court." *Commonwealth ex rel. Gregory v. Gregory,* 188 Pa. Superior Ct. 350, 356, 146 A. 2d 624, 627 (1958). Furthermore, we are not bound by a finding of fact which has no competent evidence to support it. We are also charged with the responsibility of seeing that the relevant legal principles are correctly applied. *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa. Superior Ct. 167, 172, 138 A. 2d 225, 227 (1958).

In child custody cases our paramount concern and the concern of the court below is the welfare of the child. *Commonwealth ex rel. Shipp v. Shipp,* 209 Pa. Superior Ct. 58, 223 A. 2d 906 (1966). However, "[i]t is presumed to be for the best interest of the child to be in the custody of its natural protector, its parents, and particularly the mother in the case of young children. Compelling reasons must appear before a natural parent will be deprived of custody." *Cochran Appeal,* 394 Pa. 162, 165, 145 A. 2d 857, 858 (1958). In one of our cases we said that the prima facie right of a mother to her young children is "[o]ne of the strongest presumptions in our law. . . ." *Commonwealth ex rel. Logue v. Logue,* 194 Pa. Superior Ct. 210, 215, 166 A. 2d 60, 64 (1960). The right of a mother to the custody of an illegitimate child is superior to that of all other persons. *Latney's Appeal,* 146 Pa. Superior Ct. 20, 21 A. 2d 521 (1941). Unless compelling reasons appear to the contrary, such child if of tender years should be committed to the care and custody of its mother. *Commonwealth ex rel. Kevitch v. McCue,* 165 Pa. Superior Ct. 49, 67 A. 2d 582 (1949).

The court below recognized the prima facie right of the mother to this child of tender years but refused to apply the rule. The court apparently concluded that there were compelling reasons for taking the child away from its mother.

Usually a child is taken away from a mother for abandoning, neglecting or failing to support it, or by reason of her unchaste or other improper conduct which would be detrimental to the welfare of the child. *Latney's Appeal,* supra. We are unable to find any such compelling reasons in this case.

The fact that the mother gets public assistance without which she could not properly raise the child is not a compelling reason. As we said in *Rinker Appeal,* 180 Pa. Superior Ct. 143, 149, 117 A. 2d 780, 784 (1955): "The fact that the state is supporting the children does not take away from the mother any rights which she would have to the custody of the children were she supporting them from her own resources." It is also apparent that her financial position would be improved if the putative father paid the support order regularly. We can find no evidence to support the lower court's conclusion that the mother is irresponsible and without moral character. Where the conclusion of irresponsibility comes from we cannot determine. The child is always well dressed and healthy and is never abandoned or neglected. So far as morality is concerned, the conclusion must have been based on the mother's conduct prior to the birth of Ronny. Since that time there has been not one iota of evidence of immorality unless the court below considered visiting a tavern to be such. The sale of alcoholic beverages is perfectly legal and there is no justification for classifying one who visits a licensed establishment as an immoral person. The mother's past indiscretions do not affect her fitness where, as here, she has demon-

strated her reformation for more than two years. See *Commonwealth ex rel. Self v. Self*, 153 Pa. Superior Ct. 443, 34 A. 2d 263 (1943). "[T]he controlling question is the welfare of the child at the time of the hearing before the court and not at some former time." *Commonwealth ex rel. v. Daven*, 298 Pa. 416, 419, 148 A. 524, 526 (1930).

We may not set aside the hearing judge's finding that the appellant's methods of educating and disciplining David have adversely affected him. The judge, however, concludes that the same methods might be applied to Ronny in the future to his detriment. This is simply a matter of opinion with which we are free to disagree and we do. The treatment of Ronny by his mother since his birth has been much different and entirely satisfactory. In view of this fact, an inference of future mistreatment is, in our opinion, unwarranted.

None of the other reasons given by the lower court, such as the appellees' love for the child, Mrs. Miller's availability to take care of the child or the natural father's interest in the child's well-being, are compelling reasons for taking the child away from its mother. The court points out that the Millers offer better physical facilities and surroundings, but financial advantages is no reason to separate a child from its parent. *Ashton Adoption Case*, 374 Pa. 185, 97 A. 2d 368 (1953).

Our consideration of the testimony and the merits of the case convinces us that the best interest and welfare of Ronald Gifford will be served by allowing him to remain with his mother.

The order of the court below is reversed and custody of Ronald Gifford is awarded to his mother, Mildred Gifford.

---

DISSENTING OPINION BY WRIGHT, P. J.:

I respectfully dissent.

In *Commonwealth ex rel. Golembewski v. Stanley,* 205 Pa. Superior Ct. 101, 208 A. 2d 49, in an opinion by the writer, the majority of our court as then constituted held that, as a matter of law, a putative father was not entitled to limited custody of an illegitimate child. It was our view that the best interest and permanent welfare of an illegitimate child dictated that all contact between it and the putative father should be terminated. However, the *Golembewski* case was overruled by a majority of our court as subsequently constituted in *Gwiszcz Appeal,* 206 Pa. Superior Ct. 397, 213 A. 2d 155. That case extends the right of custody to include the putative father even as against the natural mother. Judge DIGGINS was therefore warranted, if the circumstances indicated, in awarding custody to the putative father and his parents. I agree with him that the circumstances disclosed by the instant record did so indicate.

Judge DIGGINS is an able and experienced jurist. He found on ample evidence that the natural mother was "irresponsible and without moral character". The Act of 1917, cited by the majority, "was never intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge": *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350. As the majority concedes, the paramount concern in custody cases is the welfare of the child. The well-reasoned opinion of Judge DIGGINS convincingly demonstrates that the custody he decreed was "in the best interest of the child (present and future) and will enhance his physical, intellectual, moral, spiritual and emotional well being". I would affirm his order.

WATKINS and MONTGOMERY, JJ., join in this dissenting opinion.