## Commonwealth v. Walters

*Ernest L. Green,* Assistant District Attorney, for Commonwealth.

*R. Barclay Surrick,* Assistant Public Defender, for defendant.

WRIGHT, J., August 31, 1972.—On March 23, 1971, defendant, Vinton Ray Walters, 3rd, was arrested and charged with assault with intent to ravish and corrupting the morals of a minor. At the time of arrest, defendant was 19 years of age. The victim was a female child, eight years of age.

On September 9, 1971, indictments were duly presented to the grand jury and approved. The indictments were September Sessions, 1971, no. 421, containing three counts: (1) assault with intent to ravish, (2) indecent assault, (3) assault and battery; and September sessions, 1971, no. 422, charging corrupting the morals of children. On October 7, 1971, defendant filed a petition to suppress certain evidence,

the same being heard and dismissed on October 20, 1971, the day of trial. The trial was heard by a judge without jury, the court adjudging defendant guilty, on indictment no. 421, of assault and battery (3rd count). Demurrers were sustained to the charge of assault with intent to ravish (count 1) and indecent assault (count 2). Defendant was also adjudged guilty on indictment no. 422, corrupting the morals of children. Motions for a new trial and in arrest of judgment were filed, the same being heard by the court en banc and dismissed on April 19, 1972. On June 2, 1972, defendant was placed on probation for a period of two years upon payment of $100, and a sum equal to the costs of prosecution for the use of the County of Delaware, on each indictment. An appeal to the Superior Court of the Commonwealth of Pennsylvania was subsequently filed, making this opinion necessary.

At the trial, the victim testified that, as she was on her way home from school, defendant called to her from the doorway of his home. Upon approaching the home, defendant allowed her to enter. Upon entry, defendant asked the victim her name, told her to remove her hat and coat and then walked her into a bedroom. Once there, defendant asked her to lie down on the bed, to which request she complied. While on the bed, the victim testified that defendant touched her left leg, above the knee, and also told the victim to spread her legs, to which she replied "no." The victim started to cry, with defendant responding "Jesus Christ, stop crying."

Upon the victim stating she wanted to go home, defendant extracted her promise of secrecy, allowed her to put her hat and coat on, and the victim departed. Upon her arrival at home, the victim's step-father noted she had been crying, listened to her recount the past events, and immediately put her in

a car and drove to where his step-daughter indicated the events had occurred. The step-father reported these facts to the police and, hence, the arrest of defendant.

Further testimony revealed that defendant's mother arrived at police headquarters and approached the arresting officer. The police lieutenant asked defendant's mother if she would object to accompanying him to her home, the purpose of which was to ascertain whether or not a certain object, which the victim identified, was present in the room where the assault took place. The lieutenant wrote "a yellow doll" on a piece of paper and gave it to the mother with instructions to open same after they had entered the subject bedroom. To this, the mother agreed.

After being allowed to enter the home by defendant's mother, she and the police officer went to the subject bedroom and found a yellow teddy bear sitting on top of defendant's bureau. Upon being instructed to open the piece of paper by the officer, defendant's mother read the words and stated, "Well, I still don't believe it." No search warrant was involved. The object was not seized by the officer, nor was the piece of paper saved, nor made part of the evidence.

It is assumed that the two arguments presented to the court in support of defendant's post trial motions are the basis of this appeal. They are: (1) the testimony of the police lieutenant should have been suppressed; (2) assuming the truth of the testimony of prosecutrix, such acts by defendant do not amount to the act of corrupting the morals of a minor.

It is first to be recognized that, where a case is tried before a judge without jury, such as the instant case, the credibility of witnesses and the weight to be accorded their testimony is a matter for the trial judge. Additionally, his finding has the same effect as does a jury verdict: Jones v. Steinberg, 178 Pa. Superior Ct.

517 (1955); Robinson Electrical Co. v. Capitol Trucking Corp., 168 Pa. Superior Ct. 430 (1951); Commonwealth ex rel. Gifford v. Miller, 213 Pa. Superior Ct. 269 (1968).

The first issue to be raised respecting the alleged search of defendant's bedroom is the consent of defendant's mother to the police to enter her house and, subsequently, her son's bedroom, whereupon the yellow doll or teddy bear was observed. At the trial, the arresting officer testified that he had spoken to defendant's mother at the police station and asked if she would object if they went to her home and looked in a bedroom. Additionally, he indicated that he would write something on a piece of paper, give it to her, and she was to open the paper and examine what he had written after they had entered the subject bedroom. She consented. They drove to her home and, upon entering the son's bedroom, observed a yellow teddy bear on top of the bureau. In United States ex rel. Harris v. Hendricks, 423 F.2d 1096 (1970), the court said:

"It is settled that 'the existence and voluntariness of a consent is a question of fact', to be decided in the light of the attendant circumstances by the trier of facts. Critical factors of attendant circumstances include the setting in which the consent was obtained, what was said and done by the parties present with particular emphasis on what was said by the individual consenting to the search, and his age, intelligence and educational background." [Citing Maxwell v. Stephens, 348 F.2d 325, 336 (8 Cir. 1965), cert. den. 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed. 2d 353, and U.S. ex rel. Gockley v. Myers, 378 F.2d 398, 399-400 (3 Cir. 1967).]

After observing defendant's mother, both during the suppression hearing and at trial, the court is satis-

fied that she was intelligent, well spoken, and was of an educational background that would allow her to understand the full import of what events were unfolding before her on the day of her son's arrest. No tricks, coercion or duress were shown to exist so far as the police officer's words or actions were concerned. On the contrary, the police lieutenant testified that he had known defendant's mother for years, and that he was trying to convince her that there existed grounds for the investigation that was ongoing.

Defendant's counsel, on the other hand, contends that, notwithstanding the overt consent of defendant's mother, the alleged search must be rendered a nullity since the police did not advise defendant's mother of Fourth Amendment rights against a warrantless search. Attention is invited to United States ex rel. Harris v. Hendricks, supra, and the cited cases therein on pages 1101 and 1102, specifically holding that consent, if found valid in all other respects, is not rendered a nullity by failure of the police to advise the person of Fourth Amendment rights.

The last point that must be addressed, in relation to the alleged search, is that of whether or not defendant's mother could validly assent to the search of her son's bedroom. Judge Freedman, of our United States Court of Appeals, addressed himself to the question of third-party consent to search in United States ex rel. Cabey v. Mazurkiewicz, 431 F.2d 839 (1970), pointedly stating that "the doctrine which recognizes the validity of a third party's consent to a search must be applied guardedly to prevent erosion of the protection of the Fourth Amendment," at page 843. Judge Freedman recognized three categories of third-party consent searches: (1) consent by party

having joint right to control to search directed at himself, when evidence is obtained harmful to himself; (2) consent by one having joint right to control to search directed at himself, when evidence is obtained harmful to another; and (3) consent by one having joint right to control to search in relation to the other out of hostility toward that other person. It is to be noted that Judge Freedman earlier recognized a fourth category of third-party consent to a search in his opinion in the case of United States ex rel. McKenna v. Myers, 232 F. Supp. 65 (1964). In that case, as in the instant case, defendant's mother had given her consent to Federal agents to conduct a search of her own house within which defendant, her son, resided. Judge Freedman stated, without apparent hesitation, at page 66:

"In the circumstances here presented the voluntary consent of relator's mother, if it was given, would be binding on the relator and would preclude the claim of violation of his constitutional rights." (Cases cited.)

See also Commonwealth v. Hardy, 423 Pa. 208 (1966), where our State Supreme Court stated no proscription against a father's consent to a search of his son's bedroom, in the father's own home. In the Hardy case, the court said:

"Under the circumstances presented here the voluntary consent of Hardy's father to search *his own* premises is binding on Hardy and precludes his claim of violation of constitutional rights: (citing cases)."

This court is of the opinion that the Hardy case controls in the instant case and should be followed.

Defendant raises the additional point in his appeal, that of whether or not the testimony of prosecutrix was sufficient to amount to corrupting the morals of a minor. Our statute reads as follows:

"Whoever, being of the age of eighteen years and upwards, by any act corrupts *or tends to corrupt* the morals of any child under the age of eighteen years . . . is guilty of a misdemeanor": Act of June 24, 1939, P. L. 872, as amended, 18 PS §4532. (Italics supplied.)

It has been stated by our Superior Court that "tending to corrupt" is akin to "contributing to delinquency," insofar as it is a broad term involving conduct toward a child in an unlimited variety of ways which tends to produce or encourage conduct of such child which would amount to delinquent conduct. See Commonwealth v. Meszaros, 194 Pa. Superior Ct. 462 (1961), citing Commonwealth v. Stroik, 175 Pa. Superior Ct. 10, 15 (1954); and Commonwealth v. Palmer, 192 Pa. Superior Ct. 607, 609 (1960).

The prosecutrix was a child of tender years. Defendant was 19. Defendant entreated the prosecutrix into his mother's home, asked her to remove her hat and coat, and walked her into a bedroom. Once in the bedroom, defendant lay down on the bed and asked prosecutrix to do the same. He asked her to spread her legs and also touched her left leg above the knee. At this point, prosecutrix started to cry and immediately asked if she could go home. Before allowing her to leave, defendant made the prosecutrix promise to remain silent.

This court is strongly of the opinion that the acts that defendant committed are sufficient to allow this conviction to stand. This child, eight years of age, obviously concluded defendant was requesting something of her that was wrong. Conversely, defendant obviously knew he was committing a wrongful act, else why did he secure her promise of secrecy? The several acts of defendant, as well as the age of prosecutrix, show a course of conduct amounting to corrupting or tending to corrupt the morals of a minor.

For the reasons stated above, this court finds the conviction of defendant on charges of assault and battery, and corrupting the morals of a minor, proper.