392 A.2d 863

**COMMONWEALTH ex rel. Janet MURPHY**

**v.**

**Kathleen WALTERS and William Walters.**

**Appeal of Kathleen WALTERS.**

Superior Court of Pennsylvania.

Argued June 13, 1977.
Decided Oct. 20, 1978.

---

Steven C. Lember, York, for appellant.

Kenneth J. Sparler, York, with him William B. Anstine, Jr., York, for appellee.

420

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

On May 5, 1976, appellee Janet Murphy filed a habeas corpus petition to obtain custody of her two nephews, Billy and Joey, from their mother Kathleen Walters. Testimony of one witness was taken on August 9, 1976, and a full hearing was held on December 8, 1976. Custody was awarded to Mrs. Murphy by Order dated December 8, 1976, and appellant brought this appeal to our court. We affirm the award of custody to Janet Murphy.

At the hearing on December 8, 1976, the following people gave testimony: Janet Murphy (appellee and sister-in-law of appellant Kathleen Walters), Buelah Creekland (co-owner of one of the trailer parks in which appellant had lived), Joyce Baum (sister of Janet Murphy and girlhood acquaintance of Kathleen Walters), Kathleen Walters (mother of the two children), Joseph Murphy (Kathleen's father), and Hilda Runkle (Kathleen's neighbor in one of the trailer parks). Prior to the date of the hearing, Sister Katherine Alverta, a principal and teacher at the school attended by the two children, gave testimony. In addition, the two children were questioned in chambers, on-the-record, with counsel for both sides present.

The undisputed testimony established that appellant lived for a time with her parents and her two children in the parents' trailer home. Appellant was divorced from her husband and received only infrequent support payments. After appellant's parents moved to Florida, appellant lived in the trailer for a time with the two children and a female friend. For a time, appellant also lived with one or two men. Appellant worked at various jobs for varying periods of time; at times she lived on welfare and collected food stamps. Appellant frequently left the children with Mrs. Murphy, for periods ranging from several hours to one period of five months. When appellant joined her parents in

June of 1975, she once again left the children in the care of Mrs. Murphy, taking the precaution of having Mrs. Murphy agree in writing to give the children back when appellant had found a residence in Florida. Appellant returned to Pennsylvania in April of 1976, along with her parents and third child (an infant son fathered by a man whom appellant had lived with for a time before moving to Florida), in order to get the two children from Mrs. Murphy. Mrs. Murphy refused to give the children back, and instituted this habeas corpus action to obtain legal custody of them.

Mrs. Murphy testified regarding the living conditions in the trailer in which appellant and the children had been living. During one visit she saw "mildewed" hot dogs on the stove, and "manure from one end of the trailer to the other." (The manure came from the twelve or thirteen dogs and cats that were living in the trailer). Mrs. Murphy testified that the children were dirty most of the time she saw them, often smelling of urine, with clothes that were too small for them. On one occasion, appellant purportedly told Mrs. Murphy that she resented Joey (one of the children) a great deal, since she had gotten married because she was pregnant with him. Several times Mrs. Murphy went to the trailer to find appellant away and the children locked out. When appellant left the children with Mrs. Murphy on weekends, the children were generally hungry and dirty. When appellant came for the children in November of 1974 (after having left them with Mrs. Murphy for five months), appellant supposedly told Mrs. Murphy that she had to take the children back or her welfare would stop.

Joyce Baum, who came three or four times a year with Janet Murphy to visit the children, supported Mrs. Murphy's allegations, and gave additional information. She testified that appellant used foul language toward the children, didn't seem to want them around, and generally let them do whatever they wanted provided they didn't bother her. She also testified that during one visit, when appellant and her parents were still living in New Jersey, prior to 1970, appellant's father pulled one of the children out of his chair "by

the head" and made him eat some burnt food. She also testified that the trailer smelled of urine and ammonia.

Mrs. Creekland testified that appellant's trailer had a terrible smell from all the dogs and cats, that appellant's electricity had been shut off and the pipes had frozen as a result, and that the only heat came from the gas stove. She testified that she once saw appellant beating one of the children, "beating him and pounding him and I know his side was getting hurt." She testified about the frequent visitors, sometimes four or five a night, that would visit appellant at 2:00 or 3:00 in the morning, sometimes staying all night, causing the other residents of the trailer court to complain. Mrs. Creekland also testified that appellant had told her at one point that she was taking the boys back from Janet Murphy in order to get food stamps.

Kathleen Walters, appellant, testified that she had had financial difficulties in Pennsylvania that had caused her to leave the children with Janet Murphy for periods of time. She admitted being on welfare in Florida (her employer had gone bankrupt), but stated that she had submitted applications for other jobs, and that she could afford to feed and clothe the children because of her parents' income. The children would live with her, her parents, and the youngest child, in a rented three-bedroom house in Florida. Appellant's father, Joseph Murphy, testified mainly as to what the living conditions would be like in Florida, and about the trip he had made with appellant to Pennsylvania to pick up the two children. Hilda Runkle, a friend and neighbor of appellant for three years in one of the trailer courts, testified that appellant took care of her children, fed them, wouldn't let them run wild, in short, was "a good mother."

■ Although the preferences of children are not controlling in a determination of custody rights, they are factors which should be carefully considered by the courts. *Commonwealth ex rel. McNamee v. Jackson*, 183 Pa.Super. 522, 527, 132 A.2d 396 (1957). When the children in the case before us were questioned in chambers by the lower court judge, one child would not commit himself to a preference

for either his mother or his aunt. The other child, however, said that he wanted to stay with his uncle and aunt, because "I get more love up here." The child told of not always having enough food to eat, of having stolen food, and of his mother's failure to provide him with pills that had been prescribed for him because of urinary and kidney problems. (He had had one operation and was scheduled for another). He also described an incident in which his mother had returned home one night with some friends. Two of the women took the boys' beds while the boys slept on the floor, two men slept in the living room, and one man slept in the bedroom with their mother. When asked if he had wanted to go with his mother to Florida when his mother had come for him in April, 1976, the boy replied that he wanted to stay with his Aunt Janet, "[b]ecause I was afraid we would get treated like we were last time."

Although a parent has the legal right to custody of his or her child, this right is not absolute and will be forfeited by misconduct or other factors which substantially affect the welfare of the child. *Commonwealth ex rel. Shamenek v. Allen*, 179 Pa.Super. 169, 175, 116 A.2d 336 (1955). The child's welfare is the paramount consideration, to which all other considerations, including the rights of parents, are subordinate. *Commonwealth ex rel. McDonald v. McDonald*, 183 Pa.Super. 411, 415, 132 A.2d 710 (1957); *McNamee*, 183 Pa.Super. at 525–26, 132 A.2d 396. Testimony has been presented which, if believed, demonstrates a lack of sufficient concern on the part of appellant for the welfare of the two children involved in this proceeding. The lower court heard the testimony, observed the witnesses, and believed the evidence presented by appellee and her witnesses. There is no reason to believe that appellant's lifestyle will be different in the future, and that her attitude toward and treatment of the children will improve significantly. We have carefully examined the testimony in the case before us, and we find ample evidence to support the trial court's finding that "the best interests of the children will be

served in continuing their custody in their aunt and uncle . . . ."

Order affirmed.

JACOBS, President Judge, and SPAETH, J., concur in the result.

WATKINS, former President Judge, and HOFFMAN and PRICE, JJ., did not participate in the consideration or decision this case.