Thomas **ZAUBI**, a minor child, and Kirstine Inez Zaubi, a minor child, by their Guardian ad litem, Mary Torok, Plaintiffs,

v.

Marianne **HOEJME**, and any and all authorized representatives as may be designated by her, Defendants.

Civ. A. No. 80–1567.

United States District Court, W. D. Pennsylvania.

Nov. 17, 1980.

---

Rosemary Markham, Pittsburgh, Pa., John McIlvaine, Waynesburg, Pa., for plaintiffs.

Ewing Pollock, Pollock, Pollock & Thomas, Waynesburg, Pa., Anthony J. Polito, Rose, Schmidt, Dixon, Hasley, Whyte & Hardesty, Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

The instant action has been brought on behalf of two minor children by their guardian ad litem in an effort to vindicate the claimed right of the children, as United States citizens, to live within the United States and enjoy the protection of its laws. The Court is satisfied that it has jurisdiction in this case.

While this litigation is the first in which the children have been made formal parties, the parents of these two innocents have ceaselessly been engaged in judicial and extrajudicial efforts to obtain the right of custody and actual custody of the children. These efforts were recently the subject of two Pennsylvania appellate court decisions of which this Court takes judicial notice. The Court takes the liberty of quoting from the statement of facts in the Superior Court opinion to provide some background.

Appellant, Marianne Hoejme, is a native of Denmark. She met Thomas Zaubi, Sr., a native of Nemacolin, Pennsylvania, while the latter was serving with the U. S. Air Force in Europe. The couple were married on May 9, 1968. Following Thomas Sr.'s discharge they took up residence first in Denver, Colorado, and then Canonsburg, Pennsylvania, where their first child, Thomas Jr., was born July 29, 1970. Two months after his birth, the Zaubis took their son and moved to Copenhagen, Denmark, where Thomas Sr.

found employment with IBM and Marianne with a hospital as a nurse. A second child, daughter Kirstine Inez, was born in Copenhagen on November 2, 1973.

In December 1974, the Zaubis returned to Nemacolin, Pennsylvania, to spend the holidays, planning to return to Denmark in January 1975. On December 29, 1974, Thomas Sr. told his wife that he would not return to Denmark and would not permit the children to return either; but that Mrs. Zaubi could stay with the family or return to Denmark as she pleased. Mr. Zaubi had not given his employer, IBM, notice of his intentions and was unemployed until March 1975 when he was again hired by IBM, this time to work in Cleveland, Ohio. Meantime, Mrs. Zaubi traveled to Denmark to close their apartment and then returned to Nemacolin with the family clothes and the children's toys.

In April 1975, approximately one month after the family moved to Cleveland, appellant took her children, without the consent of her husband, back with her to Copenhagen, where she took up temporary residence with her parents. On April 8, 1975, appellant secured an Order from a Danish court giving her temporary custody of her children. Appellant subsequently moved into an apartment and regained her previous position as nurse.

Soon after Thomas Sr. returned to Copenhagen, again as an employee of IBM. He brought suit in the Danish courts to get custody of his children. Mr. Zaubi was represented by counsel and informed the court that his knowledge of spoken Danish was sufficient that the services of an interpreter would not be required. On November 26, 1975, after several hearings, custody was granted in favor of appellant with limited visitation rights to Mr. Zaubi. Visitation was initially restricted to the appellant's apartment for fear that if left alone with the children Mr. Zaubi would take them outside Denmark.

Thomas Sr. filed an appeal with the High Court of Denmark, the final appellate court, and a hearing was conducted. On April 13, 1976 the Court entered an order affirming the lower court.

On April 6, 1977, appellant secured the naturalization of both children. On June 15, 1977, Thomas Sr. also became a naturalized Danish citizen. On June 16, 1977, appellant received a final divorce decree from Thomas Zaubi Sr. At this time Mr. Zaubi was able to again appeal his case for custody of the children to the High Court of Denmark and another hearing was scheduled for November 17, 1977. On August 30, 1977, while the children were in his care during a visitation period, and while his custody appeal was pending, Mr. Zaubi fled with the children back to the United States. As a result of this act Mr. Zaubi has been charged with kidnapping by the Danish authorities and a warrant for his arrest awaits him should he attempt to return to Denmark.

Upon his return to the United States, Mr. Zaubi shuffled the children between Cleveland and Nemacolin, apparently in an attempt to conceal their whereabouts from appellant. They were not enrolled in school during this time and were kept under close surveillance by their father's family.

Appellant, after considerable searching, learned that the children were in Nemacolin in May 1978, and on May 15, 1978 filed a Petition for a Writ of Habeas Corpus in the Court of Common Pleas of Greene County. A hearing was scheduled for May 18, 1978 and service was effected on the Zaubi family in Nemacolin. Following a delay caused by Mr. Zaubi's flight from the jurisdiction of the lower court with the children remedied by a contempt citation against the [paternal] grandparents, a full hearing was held on June 20 and 21, 1978 with all parties present.

The court below decided that although the Pennsylvania Uniform Child Custody Act of June 30, 1977 (P.L. 29, No. 20, sec. 1 et seq., effective July 1, 1977, 11 P.S. §§ 2301–25), (the Act), compelled it to give full faith and credit to the Danish

decree, the court was "duty bound" to consider whether such decree was in the children's best interest, and to modify the same if necessary for the child's best interest.

The court used its discretion to award custody to appellee based on the threat of potential sexual abuse by the Danish grandfather, who had sexually abused appellant, his daughter, during her childhood. The court also noted that to return the children to Denmark would alienate them from their father, who faces kidnapping charges in that country.[1] *Commonwealth ex rel Zaubi v. Zaubi*, 418 A.2d 729 (Pa.Süper.1980).

To this fine summary of events, this Court need only add that the Superior Court held that the Danish decree was entitled to full faith and credit and that because Mr. Zaubi could not demonstrate that any physical or emotional harm would befall the children, the Pennsylvania Courts would decline to exercise their jurisdiction. The Court emphasized that the guiding light in a child custody case was the children's best interest, and that best interest required that the entire matter of child custody be litigated in the jurisdiction of the child home, absent a showing of changed circumstances. *Commonwealth ex rel. Zaubi v. Zaubi*, 418 A.2d 729 (Pa.Super.1980). That decision was recently affirmed by the Pennsylvania Supreme Court. *Commonwealth ex rel. Zaubi v. Zaubi*, 492 Pa. 183, 423 A.2d 333 (Pa. 1980).

The instant action was brought on November 3, 1980, on behalf of the children to enjoin Ms. Hoejme from removing the children from the United States as contemplated by the award of custody in violation of their constitutional rights. A preliminary dispute is whether or not the children are indeed citizens of the United States. Thomas Jr. was born in the United States. At that time he was a United States citizen. 8 U.S.C.A. § 1401(a).[2] Kirstine Inez was born in Copenhagen, Denmark and would be a citizen at birth pursuant to 8 U.S.C.A. § 1401(g).[3] Thereafter, both children were naturalized in Denmark. This naturalization could not affect the citizenship of the children under United States law. Only by a voluntary act of expatriation may the citizen's relationship with the state be terminated. *Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967). The naturalization of the children was not their personal act, and this Court seriously questions the ability of any person to so terminate the United States citizenship of a minor child. Thus, at least for this litigation, the children are indeed United States citizens.

Having established that the children are citizens of the United States, this Court must determine if it is appropriate to intervene in view of all the circumstances in this case. Because of the long standing proscription against the intervention of federal courts in domestic relations cases,[4] this Court must address the issues of abstention,

---

1. Counsel for Ms. Hoejme represented to this Court that these charges have been withdrawn so that should Ms. Hoejme return to Denmark with the children Mr. Zaubi would be able to take advantage of whatever visitation rights he might be accorded.

2. These sections were amended to their present form in 1978 by Pub.L. 95–432, 92 Stat. 1046, with no effect on their interpretation for purposes of the current problem.

3. See note 1. In addition, 8 U.S.C.A. § 1431 (also amended without effect here) may be applicable to a determination of the children's citizenship. That section would, as a prerequisite, require that Mr. Zaubi was and has always been a citizen of the United States. Though Mr. Zaubi was naturalized in Denmark this Court is convinced that Mr. Zaubi never evi-

denced the intent necessary to surrender his United States citizenship. *Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967).

4. *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1977) (abstention appropriate in due process challenge to Texas state proceeding to terminate parent-child relationship with pending state proceeding). *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1889). The Court is mindful of the teaching of the Third Circuit in *Lehman v. Lycoming County Children's Service Agency*, No. 79–2466 (3rd Cir. July 23, 1980) that constitutional limits on state intrusion into the family may be enforced by the federal courts, however, the instant case is distinguishable because of the relationship to the custody proceeding).

and declines, on that basis, to adjudicate the present controversy. In so deciding, this Court heeds the counsel of the United States Supreme Court that abstention is appropriate when the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

In an effort to establish the right of child-citizens to remain in the United States, the plaintiffs have referred this Court to *Acosta v. Gaffney*, 558 F.2d 1153 (3rd Cir. 1977). In that case, the court recognized that a child-citizen who had reached the "years of discretion" could assert a right to remain within the United States, however because the plaintiff, age twenty two months, was unable to exercise that right *personally*, it would be constitutionally permissible to have the plaintiff accompany her alien parents when they were deported from the United States. The court noted that the citizen could return to the United States when she, herself, so decided. In *accord, Martinez de Mendoza v. Immigration and Naturalization Service*, 567 F.2d 1222 (3rd Cir. 1977); *Gonzalez-Cuevas v. Immigration and Naturalization Service*, 515 F.2d 1222 (5th Cir. 1975); *Aalund v. Marshall*, 461 F.2d 710 (5th Cir. 1972); and *Mendez v. Major*, 340 F.2d 128 (8th Cir. 1965). *Acosta* and the other cited cases were appropriate for federal review since the issues raised were associated with national immigration policy. Those cases are substantially dissimilar from the present case which involves the assertion of rights by child-citizens who have been the subject of extensive custody litigation. Because of the intensive inter-relationship[5] between the resolution of the rights claimed and the best interest of the child which is considered in custody litigation, and because of the disruptive effect a decision by this Court would have on the custody issues, this Court is compelled to abstain.

▪ In any state custody proceeding, the court is concerned with but one issue, the best interest of the child. *Commonwealth ex rel Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972); *In re Snellgrose*, 432 Pa. 158, 247 A.2d 596 (1968); *Lewis v. Lewis*, 406 A.2d 781 (Pa.Super. 1979); *Wenger v. Wenger*, 406 A.2d 555 (Pa.Super.1979); *Martinchek v. Martinchek*, 262 Pa.Super. 346, 396 A.2d 788 (1979); *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978); and *Shoup v. Shoup*, 257 Pa.Super. 263, 390 A.2d 814 (1978). In evaluating the best interest of the child, the child is not considered chattel; and for this reason custody proceedings may be reopened upon a change of circumstances. *Friedman v. Friedman*, 224 Pa.Super. 530, 307 A.2d 292 (1973); *Commonwealth ex rel Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968); *Commonwealth ex rel Robinson v. Ziegler*, 205 Pa.Super. 29, 206 A.2d 324, 327 (1965); and *Commonwealth ex rel Cleary v. Weaver*, 188 Pa.Super. 197, 146 A.2d 374 (1959). In focusing on the child, one factor to be considered is the statement of the child, if the child is able to make one, exercising a preference to live with one parent or the other.[6] This preference, though not the controlling factor, becomes more important with the advancing age, experience and maturity of the child.

---

**5.** The children understand that the assertion of the right to remain within the United States is an attempt to aid their father's custody claim. The children both expressed a desire to live with him in an in-Chambers interview. The Court also notes that the children have lived with their father since 1977 and is sensitive to the subtle pressures that may have been brought to bear. *See* note 6 *infra*.

**6.** The trial court must determine if the child can express a meaningful preference and must be concerned with pressures exerted by a parent in pretrial custody. *In re Leskovich*, 253 Pa.Super. 349, 385 A.2d 373 (1978). In *McCourt v. Meyers*, 407 A.2d 875 (Pa.Super. 1979) and *Tomlinson v. Tomlinson*, 248 Pa.Super. 196, 374 A.2d 1386 (1977) the children, ages nine and thirteen respectively, both expressed a desire to live with their father so that they might have a dog. Needless to say this factor was not given significant weight. In contrast, in *Commonwealth ex rel Murphy v. Walters*, 258 Pa.Super. 418, 392 A.2d 863 (1978) child recognized that aunt who cared for him "gave more love" than mother who would desert him from time to time.

Thus, in this way, at least, the child is often a real participant in the custody proceeding.[7]

Furthermore, though the child is not generally a formal party to the litigation, intervention may be possible by a guardian or next friend on behalf of the child. See Pa.R.C.P. 2026–2050, 2326–2350.[8] In fact, the child may be entitled to counsel where his interests are so different from those of the other parties. *In re Interest of Pernishak*, 408 A.2d 872 (Pa.Super.1979) (child has independent right to counsel that cannot be waived by other participants in a proceeding to determine termination of parental rights). In *accord, In re Interest of Clouse*, 244 Pa.Super. 396, 368 A.2d 780 (1976) and *In re Interest of La Rue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976). Because of the potential participatory rights of the child with interests different from the parents, and because the parent, to whom the citizenship of the child might be a factor favoring an award of custody to that parent, will undoubtedly present this issue, this Court is satisfied that an opportunity does exist to present a child's claim to live within the United States in the custody proceeding. The Courts of Pennsylvania are required to, and do, enforce the United States Constitutional rights in matters before them. The opportunity is all that must exist to permit abstention, *Moore v. Sims, supra*.

Though abstention is permitted if the opportunity to litigate exists in state court, abstention is not required for this reason. Abstention, that doctrine designed to promote federal-state comity, is required when to render a decision would disrupt the establishment of a coherent state policy. *Colorado Water District, supra*. That is the principal reason for abstention in the instant case.

Since the custody of children is regulated by the standard, "the best interest of the child," and because a change of circumstances may occur to change what is in the child's best interest,[9] custody proceedings are always subject to being reopened. Recently, custody was finally awarded in the instant case to Ms. Hoejme, the children's mother, after two and one-half years of custody litigation in Pennsylvania. Now, on behalf of the children, this litigation has been brought to determine the constitutional rights of the children. For this Court to entertain this claim is to inevitably create a change in circumstances [10] that will probably cause the state custody proceeding to be reopened,[11] thus necessitating further litigation efforts in state court to reevaluate the children's best interest once again. Thus what may be "necessary" in the case of American children, who have one alien parent and who are the subjects of a custody battle are three judicial determinations to resolve custody—(1) state proceeding to determine custody, (2) federal proceeding to evaluate children's claim of right to remain

---

7. The Pennsylvania courts decided that the children involved in the case *sub judice* have not yet reached the required "age of discretion", since their wishes as to custody were ignored.

8. In *Magaziner v. Montemuro*, 468 F.2d 782 (3rd Cir. 1972), the federal court abstained from deciding whether a Pennsylvania state court order vacating an *ex parte* appearance of counsel as next friend of children in child custody proceeding violated due process, without an effort to attempt to intervene in using available rules. Though no reported appellate court decision in Pennsylvania has passed on right of minors to intervene, neither has it been necessary for federal courts to consider the constitutional aspect again. From this the Court concludes that the available state practice is satisfactory.

9. Changed preference of children may warrant change of custody. *In re Carlisle Appeal*, 225 Pa.Super. 181, 310 A.2d 280 (1973). *See also, Tomlinson v. Tomlinson*, 248 Pa.Super. 196, 374 A.2d 1386 (Pa.Super.1977) and *Williams v. Williams*, 223 Pa.Super. 29, 296 A.2d 870 (1972).

10. Once the Federal Court intervenes delaying complete implementation of the state custody award while making a decision, some time will elapse. This time period will alter the circumstances upon which the state award of custody was made because the children's age will have advanced and the attachment to a parent may increase. Thus, once there is federal intervention, a second state custody proceeding will be a near necessity.

11. See discussion of cases involving Ida Bergman, *infra*.

in the United States, and (3) a new state custody proceeding to consider the federal decree—absent federal abstention. Three judicial proceedings would absolutely contravene any hope of that stability that is necessary in the lives of children. As the Superior Court stated in outlining the policy behind the Uniform Child Custody Jurisdiction Act, (UCCJA), "[T]he purpose of the Act is to *provide stability* to the home environment and to family relationships by *discouraging continuing controversy* over child custody and visitation; ..." (Emphasis Added) *Commonwealth ex rel Zaubi v. Zaubi*, 418 A.2d 729, 732 (Pa.Super.1980). In affirming the Pennsylvania Supreme Court stated, "the purpose for which our Legislature enacted [UCCJA] is the deterrence of 'abductions and other unilateral removal of children...'" *Commonwealth ex rel Zaubi v. Zaubi*, 492 Pa. 183, 186, 423 A.2d 333 (Pa.1980). The speedy resolution of family disputes was recognized as important in *Lehman v. Lycoming County Childrens Service Agency*, No. 79–2466 (3rd Cir. 1980) (Slip Op. at 12–13 n. 13 and 38) (exhaustion of state remedy not necessary to seek federal habeas corpus relief when parental rights are terminated) by both the majority and the dissenter.

In addition to abstention, several other bases are suggested for federal refusal to grant relief by the litigation involving Ida Bergstrom, a child who had the misfortune of being the center of a similar dispute. With the divorce of Mr. and Mrs. Bergstrom, custody of Ida was given, pursuant to court order, to Mrs. Bergstrom in Norway for the school year and to Mr. Bergstrom in North Dakota during the summer. When Ida returned to the United States, Mr. Bergstrom initiated a custody proceeding in state court and an action was brought in federal court on Ida's behalf to prevent her as a citizen from being sent to Norway. Initially, the federal district court enjoined both Mr. and Mrs. Bergstrom from removing Ida from the United States. *Bergstrom v. Bergstrom*, 478 F.Supp. 434 (D.N.D.1979). Meanwhile, in state court, the trial court found that Ida's stated preference, to live with her father, was not independently

made and custody was left with Mrs. Bergstrom while limited visitation rights were accorded Mr. Bergstrom. That action was appealed to the North Dakota Supreme Court. While the appeal was pending in North Dakota state court, the United States Court of Appeals for the Eighth Circuit vacated the decision of the district court as not ripe. The lack of ripeness was found to exist because the pending state appeal might avoid the need for a constitutional decision by granting custody to the father. *Bergstrom v. Bergstrom*, 623 F.2d 517 (8th Cir. 1980). The state Supreme Court thereafter decided that Ida's best interest would be served by a change in the custody award, so that the mother was entitled to custody within the United States and declined to reach the constitutional issue. *Bergstrom v. Bergstrom*, 296 N.W.2d 490 (N.D.1980). Interestingly in avoiding the constitutional claim the North Dakota courts did not do so in the manner mentioned by the Court of Appeals, giving custody to the father.

The Bergstrom litigation suggests that the state courts may consider as part of the best interest of the child, the nation of residence for the child when the claim of the child to remain in the United States is made. If the state court in the instant case or in a similar case reaches a decision like that reached by the North Dakota Supreme Court then the need for a decision on constitutional grounds will be unnecessary. This is an important reason to have the claim presented in state court first. Additionally, the Court of Appeals decided on the issue of ripeness. However, since a custody proceeding is always subject to being reopened, it is conceivable that no case can ever be ripe; the state courts may always revise their custody order and eliminate the need for constitutional decision.[12]

Finally the state courts are at least as well equipped to determine if the child is able to exercise his right to remain in the United States. The state courts must constantly review the experience and maturity of a child who expresses a preference to live with one parent or the other. There is no

---

12. A petition for rehearing in the case *sub judice* is apparently pending in the Pennsylvania Supreme Court. The time to seek reargu-

ment is governed by Rule 2542 of Pa.R.A.P. and is fourteen days.

reason to believe that this Court, in evaluating whether or not a child is within the "years of discretion", would apply a standard substantially different from that currently used in state court or present any unique difficulties for those courts.

In summation, this Court, guided by the experience of the Bergstrom litigation, sensitive to the need to avoid creating instability in the lives of small innocent children that would result from federal judicial involvement, mindful of the proscription against unnecessary constitutional pronouncements, and confident in the existence of an opportunity to raise constitutional claims of this sort in state custody proceedings and receive the reasoned consideration of those courts, has decided to abstain and will dismiss the complaint. The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52, F.R.Civ.P.