J-A10022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| KELLY HENNIGAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| PATRICK HENNIGAN | : | |
| | : | |
| Appellee | : | No. 3193 EDA 2022 |

Appeal from the Order Entered November 17, 2022
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2021-10052-CU

BEFORE: PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED SEPTEMBER 7, 2023**

Appellant, Kelly Hennigan ("Mother"), appeals from the order entered in the Chester County Court of Common Pleas, which awarded Mother and Appellee, Patrick Hennigan ("Father"), shared physical and legal custody of their minor child, C.H. ("Child"). We affirm.

Mother and Father married in May 2006 and Child was born in May 2011. The parties divorced in August 2018 and subsequently developed a separation agreement where the parties shared equal physical and legal custody of Child. This agreement was in place for close to five years. On December 22, 2021, Mother filed the current custody complaint seeking primary physical custody of Child during the school year from Sunday through Thursday nights and

_____

[*] Former Justice specially assigned to the Superior Court.

alternating weekends.

On October 5, 2022, the trial court conducted a custody hearing. At that time, Child was eleven years old and in the sixth grade. Both parties agreed that they did not wish for Child to testify. Mother testified that she agreed to the original 50/50 custody agreement because she wanted Father to be present in Child's life and wanted Child to have equal access to both his parents. Nevertheless, Mother had concerns about Father's parenting decisions which persisted over the years, prompting the filing of the instant complaint.

Mother further testified that she had concerns about the 50/50 custody arrangement because she carried the brunt of the responsibility of looking after Child's education, hygiene, extracurricular activities, and medical appointments while Mother and Father were married. Mother maintained that she continued to be primarily responsible for these aspects of Child's care despite Father having shared equal custody since their divorce. Mother testified that Child bathes on average every other day at her house and raised concerns that Father does not require Child to bathe while in his custody even when Child is at Father's residence for five-day stretches. Mother stated that she fears Child may be bullied at school if the hygiene issues persist. Mother further testified that Child gets an average of nine hours of sleep at Mother's house while only getting an average of roughly seven hours at Father's house. Mother also raised concerns that Child spends too much time on his iPad while

at Father's residence. Mother testified that she restricts Child's screen time to two hours while at her house, but the iPad usage history shows that Child uses the iPad for over four hours on average at Father's house.

Additionally, Mother claimed that Father has failed to take an interest in Child's education, medical appointments, and extracurricular activities. Mother testified that Father does not attend back-to-school nights or parent/teacher conferences. Mother also stated that Father is not enrolled in the online portals and email lists that provide information about school activities and assignments. This resulted in instances where Child fell behind on assignments and Father was unaware. Mother also stated that she schedules all of Child's medical and dental appointments and Father has attended very few of them. Mother expressed that she also takes charge of signing Child up for activities, such as music lessons, swimming lessons, and sports. Mother noted instances where Child missed lessons or games when he was in Father's custody. Mother also raised concerns about Child's living conditions at Father's residence. Prior to Mother's filing of the custody complaint, Father lived in a one-bedroom apartment and Child often slept in a king size bed with Father. Mother also testified that Father consumed alcohol to excess during their marriage and she was worried that Father continued to do so while Child is in Father's custody. Mother stated that Child has a strong relationship with Father, and she did not want to interfere with Father's relationship with Child, but she believes Child will succeed more if his

activities and hygiene are maintained with her during the school year.

On cross-examination, Mother acknowledged that many of her concerns had been addressed since she filed the custody complaint. Child is clean when he returns from Father's house and Child is going to bed at roughly the same time at Father's house as he does at Mother's house. Father signed Child up for Boy Scouts and guitar lessons and Child enjoys participating in these activities. Father has also purchased a house and Child has his own room at the new house. Mother also acknowledged the results of two hair follicle tests that Father underwent which showed that Father had low to moderate consumption of alcohol. Mother further testified that Child is doing well in school, and she has no concerns about his physical or mental health.

Father testified that he moved from Connecticut to Pennsylvania in 2018 because Mother got a new job in Pennsylvania and he wanted to remain close to Child. Father testified that at the time, Mother had to co-sign on his one-bedroom apartment lease because of Father's financial constraints. Father owns a business and due to the financial strain of growing a business, he was unable to afford a bigger apartment for a period of time. Father testified that he often slept on the couch to allow Child a more restful sleep. Father's business has since become successful, and Father was able to purchase a home where Child has his own room. Father's house is only five miles away from Mother's residence and within Child's school district.

Regarding Mother's concerns, Father stated that Child bathes on

average every other day or every three days when he is in Father's care. Father testified that every day when Child gets home from school, he asks Child about assignments that need to be completed. Child is typically very responsible about completing his assignments and will often work on his homework on his own next to Father while Father is working. If Child has questions or asks for help, Father will assist him. Father stated that he is signed up to the school portals and email lists that provide information about school activities and assignments. Regarding Mother's claim that Child missed assignments while in Father's care, Father stated that both Mother and Father missed the assignment in question due to the confusion that arose when distance learning began during the COVID-19 pandemic. Father testified that he places a great deal of importance on Child's education and Child is doing very well in school. Father further testified that Child does not spend an excessive amount of time on his iPad. Child often plays video games with his friends and may leave the game on standby mode so that he can maintain his place in the game. Child also goes to bed at around 9:30 p.m. at Father's house.

Regarding medical appointments, Father stated that Mother schedules and attends most of Child's appointments because Mother wants to oversee the details. Father noted an instance where he scheduled an appointment for Child and Mother unilaterally cancelled the appointment because it was scheduled during school hours. Father stated that he would be happy to take

on more shared responsibility for appointments if Mother so desired. Father also submitted to hair follicle tests in March 2022 and July 2022, and both tests demonstrate low to moderate consumption of alcohol.

Father testified he has a strong bond with Child and they discuss everything from school, navigating friendships, current events, to shared interests. Father and Child share a love of music which Father fosters by getting Child a Spotify account, signing him up for guitar lessons, and discussing music that they like. Father also does activities with Child on the weekends, such as going bowling, going to the pool, playing sports and taking him to amusement parks. Father acknowledged that he has a different parenting style than Mother but maintains that he plays an important role in Child's life. Father stated that Child is doing well under the current custody schedule due to his close relationship with both parents, and reducing Father's custodial time to four days every two weeks would be disruptive and shocking to Child.

The trial court entered a custody order on November 17, 2022, awarding Father and Mother shared legal and physical custody, maintaining the 50/50 custody schedule to which Child is accustomed. On December 16, 2022,

Mother filed a timely notice of appeal and a contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal.[1]

Mother raises the following issues for our review:

1. Whether the Honorable Trial Court erred in denying [Mother's] request for primary physical custody after consideration of the relevant factors as set forth at 23 Pa.C.S.A. § 5328 when the Honorable Trial Court's own findings at trial favor Mother?

2. Whether the Honorable Trial Court erred in weighing Custody factor (a)(1) under 23 Pa.C.S.A. § 5328, "Which party is more likely to encourage and permit frequent and continuing contact between the child and another party," in Father's favor when it did not analyze Father's actions in this regard or provide any basis for this finding?

3. Whether the Honorable Trial Court erred in failing to weigh in Mother's favor Custody factor (a)(4) under 23 Pa.C.S.A. § 5328, "The need for stability and continuity in the child's education, family life and community life," when the Honorable Trial Court failed to consider testimonial and documentary evidence of Father's inability to understand or keep up with the child's education and extracurricular activities and when the Honorable Trial Court found it uncertain that Father

_____

[1] On March 7, 2023, Father filed an application to dismiss in this Court, claiming that Mother failed to comply with Pa.R.A.P. 2154(c)(1) (regarding filing and service of designation of parts of record which party intends to reproduce and brief statement of issues which party intends to present for review). On March 9, 2023, Mother filed a response acknowledging her noncompliance, but emphasizing that the certified record had been filed and all references to the certified record were specifically cited in Mother's brief. Mother also filed her reproduced record on the same day. Under these circumstances, Mother's noncompliance with the relevant rules did not hamper this Court's ability to conduct review. Accordingly, we deny Father's application to dismiss. *See, e.g., Clark v. Peugh*, 257 A.3d 1260, 1264 n.1 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 1079 (2021) (declining to quash appeal for appellant's failure to file reproduced record where this Court's ability to review appeal was not substantially impeded).

would have provided appropriate living arrangements for [C]hild without Mother's insistence?

4. Whether the Honorable Trial Court erred in failing to weigh in favor of Mother Custody factor (a)(9) under 23 Pa.C.S.A. § 5328, "Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs," when the Honorable Court found that, "Mother has a proven record of providing a loving, stable, consistent, and nurturing home for the child?"

5. Whether the Honorable Trial Court erred in failing to weigh heavily in Mother's favor Custody factor (a)(10), "Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child," when the Honorable Trial Court did not address or consider in any way the undisputed testimony of Mother's significant role in the Child's education— including being the sole parental participant in parent-teacher conferences and her knowledge of the Great Valley school system, as well as the documented evidence Mother presented at trial demonstrating the child's significant lack of sleep and excessive time spent on electronic devices in Father's care, and when the Honorable Trial Court ignored its own stated concerns regarding Father's lack of responsibility for the child's hygiene, partially chalking it up to a "Men are from Mars, Women are from Venus" issue?

6. Whether the Honorable Trial Court erred in failing to weigh more heavily in Mother's favor Custody factor (a)(13), "The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another," when the evidence presented demonstrated that Mother is the party who strives to ensure cooperation between the parties for the benefit of [C]hild and that Father is the party who, despite Mother's efforts and a court order to use Our Family Wizard, is frequently unable, significantly delayed, or unwilling to communicate with Mother, creating an atmosphere of frustration and conflict?

7. Whether the Honorable Trial Court erred by weighing only slightly in Mother's favor Custody factor (a)(14) under 23 Pa.C.S.A. § 5328, "The history of drug or alcohol abuse of a party or member of a party's household," when the Honorable Trial Court found Mother's testimony regarding Father's alcohol abuse credible, when the Honorable Trial Court found it unusual for a person with such an alcohol problem to be just fine without professional assistance, which Father has not sought, and when Father admitted to drinking most days for a total of 14-28 drinks per week?

(Mother's Brief at 4-7).

Our scope and standard of review in custody matters are as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Allison Bell

- 9 -

Royer, we conclude Mother's issues merit no relief. The trial court opinions filed on November 17, 2022 and January 17, 2023 comprehensively discuss and properly dispose of the questions presented. (**See** Custody Order and Opinion, filed 11/17/22 and Rule 1925(a) Opinion, filed 1/17/23). In those opinions, the court properly assessed and weighed the sixteen custody factors, finding that factors (a)(3), (a)(10), (a)(13) and (a)(14) weighed in favor of Mother, factors (a)(1) and (a)(4) weighed in favor of Father, factors (a)(5), (a)(8), (a)(9), (a)(11) and (a)(12) did not favor either party, and the remaining factors were inapplicable. (**See** Custody Order and Opinion, at 2-9 unpaginated).

With respect to Mother's first claim on appeal, the court stated that it did not abuse its discretion in denying Mother's proposed custody schedule despite finding that more custody factors weighed in Mother's favor than Father's. The court explained that a custody determination should not be a formulaic tallying of the number of custody factors and the court has discretion to assign varying degrees of weight to each of the sixteen custody factors as appropriate in each case, with the only limitation that factors affecting the safety of the child must be given significant weight. As there were no concerns about the safety of Child in this matter, the court acted within its discretion in finding that factor (a)(4), the need for stability, should be weighed heavily to prevent disturbing the longstanding custody arrangement to which Child is accustomed, particularly where Father undertook actions to remedy much of

Mother's concerns prior to the custody trial. Accordingly, the court did not err by maintaining the current custody schedule in Child's best interests regardless of its finding that more custody factors weighed in Mother's favor. (*See* Rule 1925(a) Opinion at 16-17).

Regarding Mother's second claim, there is no evidence that Father has ever attempted to restrict or limit Mother's access to Child or taken any action to hinder Mother's relationship with Child. Father has consistently maintained throughout the pendency of this case that he wanted to keep the 50/50 custody schedule so that Child can continue to have a good relationship with both parents. Although the court did not doubt Mother's intentions in filing the instant complaint, the court noted that Mother's proposed custody schedule would lower Father's custodial time to four days in two weeks during the school year. Accordingly, the court acted within its discretion by weighing factor (a)(1) slightly in Father's favor. (*See* Custody Order and Opinion at 2-3 unpaginated).

Addressing Mother's third claim that the court erred in finding that factor (a)(4) weighed in Father's favor, the court noted that Child is thriving under the current custody arrangement which has been in place since Child was approximately seven years old. Child has a great relationship with both parents, is doing well in school, participates in extracurricular activities, and is physically and mentally healthy. The court further noted that Father took steps to remedy many of Mother's concerns regarding hygiene, sleep, screen

time and living arrangements prior to the custody hearing, and the court had no concerns regarding either parent's ability to care for Child. Accordingly, the court determined that Child greatly benefits from the equal time that he spends with both parents and factor (a)(4) weighs in favor of maintaining the shared 50/50 custody arrangement, which is Father's position. (*See* Custody Order and Opinion at 4 unpaginated; Rule 1925(a) Opinion at 17-21).

Regarding Mother's fourth and fifth claims that the court erred in failing to find that factor (a)(9) and (a)(10) weighed heavily in Mother's favor, the court found that both parents love and participate in Child's life. The court acknowledged that Mother has historically attended more closely to Child's daily needs and activities and found that factor (a)(10) weighed in Mother's favor. Nevertheless, the court noted that it is not required to give greater consideration to a parent's historical role as the Child's primary caregiver. There was ample evidence that at the time of the custody hearing, there were no present issues with Child's hygiene, sleep schedule, living arrangements, education, or extracurricular activities while in Father's custody. Accordingly, the court had no concerns about either parent's capacity to care for Child's daily needs at the time of the hearing. Additionally, there was no dispute that both parents love Child, have a strong relationship with him, and play an important role in Child's life. Therefore, the court did not err in finding that both parents were equally likely to maintain a loving, stable, and nurturing

relationship with Child. (**See** Custody Order and Opinion at 6-7 unpaginated; Rule 1925(a) Opinion at 14-16, 19-21).

Addressing Mother's sixth claim that the court erred by finding that factor (a)(13) only weighed slightly in Mother's favor, the court explained that there is not a high level of conflict between the parties. While Mother testified that Father is sometimes slow to respond or flippant in his communication, both parties have made consistent efforts to keep this case out of court and have demonstrated their desire to put Child first. The court acted within its discretion in assigning an appropriate degree of weight to this factor based on the circumstances of this case. (**See** Custody Order and Opinion at 8 unpaginated).

With respect to Mother's claim that the court failed to assign proper weight to its finding that factor (a)(14) weighed in Mother's favor based on Father's history of alcohol abuse, the court determined that there was insufficient evidence to conclude that Father was currently abusing alcohol or that Father's alcohol consumption was a danger to Child. While the court credited Mother's testimony that Father abused alcohol during their marriage, the court noted that Father's current alcohol intake is within the low to moderate range, as determined by two hair follicle tests that Father underwent. Father plays an active role in Child's care and there is insufficient evidence that Father's current ability to do so is hampered by alcohol consumption. Accordingly, the court found that Father's current level of

alcohol intake does not present a harm to Child and assigned an appropriate degree of weight to factor (a)(14) in its determination that maintaining Child's custody arrangement was in Child's best interests. (**See** Custody Order and Opinion at 9-10 unpaginated; Rule 1925(a) Opinion at 19). The record supports the court's conclusions. **See M.J.M., supra**. Accordingly, we affirm on the basis of the trial court's opinions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/07/2023

Received 1/11/2023 4:50:09 PM Circulated 08/16/2023 04:06 PM

Filed 1/11/2023 4:50:09 PM Superior Court Eastern District
3193 EDA 2022

KELLY HENNIGAN,
    Plaintiff

    vs.

PATRICK HENNIGAN,
    Defendant

: IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

: CIVIL ACTION-LAW

: NO. 2021-10052-CU

: IN CUSTODY

*Karen P. Reynolds, Esquire, Attorney for Plaintiff*
*Mark A. Masley, Esquire, Attorney for Defendant*

## OPINION

Trial in this custody matter was conducted before the Honorable Allison Bell Royer on October 5, 2022. Plaintiff, Kelly Hennigan, (hereinafter "Mother") and Defendant, Patrick Hennigan, (hereinafter "Father") are the parents of one minor child born of their marriage, C.H., (d.o.b. 5/7/11) (hereinafter "the Child").

The parties were married on May 26, 2006 and divorced by decree on August 16, 2018. The parties reached a comprehensive agreement in 2018 that included detailed custody provisions which governed their custody arrangement until Mother initiated the instant custody action on December 22, 2021 by filing a Custody Complaint. The parties attended custody conciliation on February 16, 2022 with Custody Conciliator Keith Boggess, Esquire and a resulting Temporary Custody Order was entered by Judge Carmody on February 18, 2022. (See Ex. M-1 B.) A review hearing (conciliation) was held before Conciliator Boggess on May 18, 2022, and an Order of Court followed by Judge Binder on May 23, 2022, which granted Father and Mother continued shared legal and physical custody, addressed vacation and holidays, and contained provisions relating to co-parent counseling, drug and alcohol testing and evaluation, a housing requirement for Father, and communication

provisions (See Ex. M-1 C.) Mother filed a Demand for Trial on June 27, 2022. Both parties filed the requisite pre-trial statements. A pre-trial conference was scheduled for September 28, 2022, was subsequently continued for attorney availability and was held on October 4, 2022 with trial before the undersigned following on October 5, 2022.

The following witnesses testified at trial: Father and Mother. After the trial began, the parties agreed on record that it was neither necessary nor in the Child's best interests for the Court to conduct an *in camera* interview of him at this time and, therefore, we did not do so.

## I. CUSTODY FACTORS

Pursuant to 23 Pa.C.S.A. § 5328(a), "[i]n ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child [...]." This Court considers the statutory factors of Section 5328(a) in numerical order:

**(a)(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

The parties had been managing the details of their custodial arrangement without court intervention until the end of 2021. Mother brought the instant action based on her concern for certain aspects of Child's time with Father. Mother named Father's alcohol consumption, his failure to secure at least a two-bedroom residence per their written agreement, Child's homework completion and hygiene problems when in Father's custody as reasons for pursuing modification. Mother stressed that she did not wish to take Child away from Father, but that he should spend most of his school

nights with her and revert to 50-50 in the summers. We do not find that Mother is lacking purity in her motivation(s) for bringing the instant action; instead we believe she has brought them due to genuine care and concern for the Child. However, we find this factor to weigh very slightly in favor of Father at this time.

**(a)(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

By agreement of the parties as placed on the record on the day of trial, and with no evidence having been presented relevant to this factor, we find it is irrelevant at this time and do not analyze it herein.

**(a)(3) The parental duties performed by each party on behalf of the child.**

The parties have had a shared custody arrangement since their separation, and the Child has thrived. We find each party to be quite capable of performing the regular duties associated with parenthood. Mother has handled the lion's share of the medical, dental, etc. scheduling and managing, and also significantly more of the school responsibilities, or at least attended to them on a deeper level. By all accounts Mother is very good at this. The parties are cautioned about falling into the post-court trap of changing their parenting setup based strictly on what was presented as evidence at trial. In other words, Mother taking the lead in scheduling and administration has worked out well for the Child. It can be more difficult for all parties when the more passive parent begins to do things he or she is unaccustomed to handling just to present a better picture in a potential future court appearance. If either party would like Father to carry more of the weight in terms of doctors, dentists,

school, etc., then this should be unequivocally communicated between them, and they should work on it together moving forward. If both parties are content with Mother being the administrator parent, then that is also perfectly acceptable. This factor is weighted in favor of Mother.

**(a)(4) The need for stability and continuity in the child's education, family life and community life.**

The parties originally lived in Connecticut. Father testified credibly about taking a new job in Chester County to be closer to the Child. Father has now purchased and moved into a new residence that complies with the living arrangement requirements of the parties' original custody agreement. It is uncertain as to whether Father would have followed through on this requirement without Mother's insistence. We agree with Mother that the prior sleeping arrangements the Child had at Father's were less than ideal and out of compliance with the terms of the parties' old agreement. Father has cured this issue. Both parties have lovely homes that are more than suitable for raising the Child. Regarding education, family and community life, there is no doubt that Mother has provided both stability and continuity. Father faced a long stretch of difficulty with employment following the loss of a highly compensated position, but has now built his own business into a success. The Child is used to a shared custody arrangement and has done very well with it. This factor weighs in favor of not disturbing the longstanding shared physical custody arrangement, which is Father's position. Under the facts of this case and in a "best interests" context, we weight this factor heavily.

**(a)(5) The availability of extended family.**

On some level both parties are appreciative of the importance of each other's presence and bond in the Child's life. There was little to no evidence presented by either side on this factor. Father testified briefly about both of his parents and a couple of his siblings being deceased. "The Child is his family." Neither side addressed this factor in closing. We do not find this factor to be particularly persuasive in this case. This factor does not currently weigh in favor of one party over the other.

**(a)(6) The child's sibling relationships.**

The Child has no siblings or step-siblings, and this factor is not relevant in the instant case.

**(a)(7) The well-reasoned preference of the child, based on the child's maturity and judgment.**

After commencement of trial, the parties agreed that it was neither necessary nor in the Child's best interests for the Court to conduct an *in camera* interview of the Child at this time and, therefore, we did not do so. We glean from the other evidence presented that both parties deeply love the Child and he them. We honor the parties' joint decision regarding the Child's testimony as we believe both were guided by viewing the Child's best interests in so deciding.

**(a)(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

We do not find that either party attempts to turn the Child against the other parent. Fortunately for the parties, they are both represented by seasoned, experienced counsel who both refrained from trying to insert the difference in

parenting styles and communication issues into an argument under this factor. These parties certainly give different weight to various parenting responsibilities, but have largely managed to keep their son appropriately insulated from their disagreements. We too often see intelligent, well-educated parties leaving their children's emotional wellbeing in tatters on the battlefield of child custody court. These parties are very careful to avoid that outcome for their son, and the value of their awareness in that regard cannot be overstated. This factor is not weighted in favor of one party over the other.

**(a)(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

Mother has a proven record of providing a loving, stable, consistent and nurturing home life for the Child. Father has shown himself to be quite capable in this realm also, basing numerous life decisions such as employment and housing to be close to the Child. This is Child is well-adjusted and thriving. This factor does not currently weigh in favor of one party over the other.

**(a)(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

Mother has been handling these needs for many years, and has certainly proven herself capable. Father has handled these things on a daily basis also, albeit not always to Mother's satisfaction. A good example of this is the hygiene issue. Mother presented evidence of a longstanding disagreement between the parties as to what is acceptable for the Child in the physical hygiene category. We see this as partially "Men are from Mars, Women from Venus" but only partially. Mother is not

wrong. When there is a noticeable odor coming from the Child (and we note that this is likely to get worse with age and hormones, not better), or the Child's hair appears greasy, etc., this is something that Father must start noticing and enforcing with more authority. It is one thing to be the weekend warrior parent that sends back the dirty kid to the other side (that scenario is also unfortunate) but it is even worse for a 50% custodian to shirk the unpleasantries of being the more consistent bordering on sole bath/shower/toothbrush/hairbrush enforcer. Not only is it unfair to the other parent as it routinely places her in a "bad guy" role, but, more importantly, it is likely to subject the Child to derision from his peers if allowed to continue. Schoolkids notice the "smelly kid" to use Mother's term, and she is only looking out for the Child in constantly reminding Father that it is important. The Child is not unique in his age group for being less than fond of routine hygiene maintenance. Often this issue will correct itself over time and the parties may one day discover they are the parents of a high schooler that takes multiple showers per day. However, for the time being, Father must step up his oversight of the Child in the hygiene category; we found Mother's testimony credible on this issue. To be clear, we are not talking about an occasional deviation for a camping trip, e.g., but for the average daily routine there is room for improvement during Father's time. This factor favors Mother.

### (a)(11) The proximity of the residences of the parties.

Mother and Father both live in the Malvern area within approximately four to five miles of each other and within the boundaries of the same school district. Distance is not an issue in this case. This factor does not currently weigh in favor of one party

over the other.

**(a)(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

Both parties are available to care for the Child or to make appropriate arrangements for child care if necessary, and therefore this factor has a neutral effect.

**(a)(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

Consistent with our analysis in Factor 8 above, this is not a high conflict case. There is a level of conflict, of course, or the parties would not be seeking judicial intervention. However, the parties are dealing with their disagreements the correct way through co-parent counseling and by keeping their disputes away from the Child. To their credit, both parties have made consistent efforts to keep this case out of court, and to make decisions with the Child's best interests front and center. Mother believes that she does more of the heavy lifting when it comes to parenting, and she may be correct. Some of that, however, may be pursuant to her design. There was evidence presented that bolstered Mother's belief that Father takes a defensive posture whenever approached by Mother regarding school, hygiene, and activity issues. We are hopeful that the parties will continue to progress with the additional co-parenting sessions they have both agreed to pursue. Each should keep an open mind to examining the other's viewpoint on these issues. We recognize that this is easier to say than to do, and is far easier to see from the outside than when living in a situation. However, the parties have shown the ability to place the Child first, and by and large

they both do that. Physical abuse is not an issue in this matter. When given full consideration spanning the life of this case, this factor slightly favors Mother.

**(a)(14) The history of drug or alcohol abuse of a party or member of a party's household.**

The provable aspect of this factor has some age to it, and that impacts its relevance and weight assigned to it. Mother testified credibly about Father's alcohol abuse during the marriage. Mother suspected that this has continued in some fashion through present day, or at least the recent past, and this was part of what precipitated her filing. Father did submit to testing and evaluation by Dr. Roeder on this topic. Dr. Roeder was not called to testify at trial. Evidence was presented without objection that Father does still drink, but that his use is in the low to moderate use range. The current custody order prohibits either party from drinking alcohol during their respective custodial time. Father denies drinking during his custodial periods (as does Mother, but Mother's alcohol usage has never been problematic to our knowledge). Mother indicated that on a couple of occasions, including once in the middle of the night late November, 2021, the Child asked to be picked up early because Father was "asleep" and hadn't stirred to engage with him or to put him to bed; Mother was alarmed by the Child contacting her at such an hour via his iPad to try to get her to come get him. Mother believed Father's inability to be roused to have been alcohol-induced, although there is no concrete proof thereof. Father did not attend rehab or seek assistance with his significant alcohol problem that he admits existed during the marriage. We do not find that Father is abusing alcohol currently. However, we say this quite cautiously as it is unusual for a person to have had an alcohol problem to the

degree of what Mother observed during the marriage (we did find her testimony credible), and then be just fine without either an epiphany of some sort *or* professional assistance to conquer those demons, neither of which is in evidence instantly. Father is cautioned that *if* he is in need of any help in the substance abuse arena, he would be wise to avail himself of same instead of kicking the can down the road. The Child needs both parties in his life; he is used to that and has thrived thus far, which is the greatest reason we decline to move away from shared custody *at this time*. Any backslide into the abyss of alcohol abuse would be a very significant factor in our eyes and could easily result in a change of custody. However, if Father is inclined to seek some help to fortify his resolve and/or obtain or strengthen a choice of sobriety, we caution Mother not to be too hasty in seeking a future modification for this reason. That would likely be examined differently than evidence of a continuing problem that Father refuses to address, and herein we caution Father. The Child is getting older and middle and high school curricula are rife with education on drugs and alcohol. *If* Father does have a problem he is attempting to cover, it is only a matter of time before it is evident to the Child; Father should not ever place the Child in the difficult position of having to choose between honesty and parent protection as that can have serious and lasting impact on both his development and his adult life. Viewed *in toto* this factor is in favor of Mother, but only slightly as with the evidence before us presently, Father seems to be in control of his alcohol issue.

**(a)(15) The mental and physical condition of a party or member of a party's household.**

Neither party presented any evidence as to this factor for either party, and neither party has another household member besides the Child. Neither side addressed this factor in post-trial submissions and we find this factor neutral.

**(a)(16) Any other relevant factor.**

Neither party presented evidence of any other relevant factors.

Accordingly, this Court enters the Custody Order that follows.

s:\ctjudges\admin\royer\family\appeals\Hennigan Kelly v Hennigan Patrick No 2021-10052-CU 12-16-22
Children's Fast Track Appeal

| | |
|---|---|
| **KELLY HENNIGAN,** | **: IN THE COURT OF COMMON PLEAS** |
| **Plaintiff** | |
| | **: CHESTER COUNTY, PENNSYLVANIA** |
| **vs.** | |
| | **: NO. 2021-10052-CU** |
| **PATRICK HENNIGAN,** | |
| **Defendant** | **: IN CUSTODY—CHILDREN'S FAST TRACK** |

*Karen P. Reynolds, Esquire, for the Plaintiff*
*Mark A. Masley, Esquire, for the Defendant*

## OPINION *SUR* RULE 1925(a)

Before this Honorable reviewing Court is the counseled Children's Fast Track Appeal of Plaintiff/Mother Kelly Hannigan from this Court's Custody Order dated November 16, 2022, which was entered on the docket on November 17, 2022. Mother filed her Notice of Appeal, along with her Concise Statement of Errors Complained of on Appeal, on December 16, 2022, within thirty (30) day period permitted by the Rules of Appellate Procedure for filing an appeal. *See* Pa. R.A.P. 903(a)("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."). Consequently, Mother's appeal is timely under Pennsylvania Rule of Appellate Procedure 903(a) and complies with the requirements for Children's Fast Track review, as set forth in Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).

The facts of this matter have been set forth in the Opinion which accompanied our November 16, 2022 Order. Our Opinion was also filed on November 17, 2022. We respectfully refer this Honorable reviewing Court to this document for a narration of the factual and procedural history of this case. Mother has appealed from

1

our Order finding that the Child's best interests will be served by continuing the parties'

shared legal and physical custody of the subject Child.

Mother sets forth numerous issues in her Concise Statement. We will recite

them below.

1. The Honorable Court erred in denying Mother's Petition for Modification of a Custody Order despite weighing the majority of the relevant custody factors in Mother's favor. Following trial, the parties agreed that only seven (7) of the 16 factors set forth in 23 Pa. C.S.A. § 5328(a) were relevant to this case and each counsel submitted written closing argument on those seven (7) factors only. The Honorable Court weighed only one (1) of those factors "very slightly" in Father's favor, while weighing four (4) of those factors in favor of Mother, and the remaining two (2) factors equally.

2. The Honorable Court erred in weighing in Father's favor Custody factor (a)(1), "Which party is more likely to encourage and permit frequent and continuing contact between the child and another party." In its Opinion, the Honorable Court provides no basis for this finding. Instead, the Honorable Court states, "We do not find that Mother is lacking purity in her motivation(s) for bringing the instant action; instead, we believe that she has brought them due to genuine care and concern for the child." The Honorable Court did not analyze at all Father's actions relating to this factor found "very slightly" in favor of Father.

3. The Honorable Court erred by failing to weigh in favor of Mother Custody factor (a)(4). "The need for stability and continuity in the child's education, family life and community life." The Honorable Court failed to consider at all the testimonial and documentary evidence related to Father's inability to keep up with the child's education and extracurricular activities without regular reminders from Mother. The Honorable Court also erred in failing to weigh this factor in Mother's favor regarding the child's living arrangement. Despite finding in its analysis of this factor that, "It is uncertain as to whether Father would have followed through on this requirement without Mother's

2

insistence. We agree with Mother that the prior sleeping arrangements were less than ideal and out of compliance with the terms of the parties' old agreement." Moreover, the Honorable Court ignored the fact that Father failed to cure his poor housing situation until he was ordered to do so by the Chester County Court of Common Pleas. Despite finding that, "Regarding education, family and community life, there is no doubt that Mother has provided both stability and continuity," the Honorable Court did not weigh this factor in either party's favor. This was in error.

4. The Honorable Court erred by failing to weigh in favor of Mother Custody factor (a)(9), "Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs." The Honorable Court erred in placing unwarranted weight on Father's move to Pennsylvania four (4) years ago and incorrectly stating that he based his employment decision on proximity to the child when the record reflects that Father had been unemployed for years prior to his move to Pennsylvania from Connecticut. Given the finding in its opinion that, "Mother has a proven record of providing a loving, stable, consistent, and nurturing home for the child," the Honorable Court erred in failing to weigh this factor in favor of Mother.

5. The Honorable Court erred by failing to weigh heavily in Mother's favor Custody factor (a)(10), "Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." The Honorable Court erred in failing to consider its own reasoning regarding Father's lack of responsibility with regard to the child's hygiene and chalked it up to partially being a "Men are from Mars, Woman [sic] are from Venus" issue. Further, the Honorable Court erred in failing to consider at all the evidence presented at trial regarding the excessive amount of time that the child spends on electronic devices while in Father's care, and the significant lack of sleep he experiences at Father's home. As the Court found in its consideration of factor (a)(3), "Mother has handled the lion's share of the medical, dental, etc. scheduling and managing, and also significantly more of the school responsibilities, or at least attended to them on a deeper level." While the Honorable

3

Court did weigh this factor in Mother's favor, by virtue of the evidence presented and its own findings, it was error not to weigh this factor heavily in Mother's favor.

6. The Honorable Court erred by failing to weigh more heavily in Mother's favor Custody factor (a)(13), "The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." Although the Honorable Court did weigh this factor "slightly" in favor of Mother, the Court erred in failing to give greater consideration to the evidence presented demonstrating Mother's role in ensuring that cooperation between the parties occurs and, despite Mother's best efforts, Father's inability or unwillingness to communicate with Mother, creating an atmosphere of frustration and conflict that is not in the child's best interest.

7. The Honorable Court erred by weighing "only slightly" in Mother's favor factor (a)(14), "The history of drug of [sic] alcohol abuse of a party or member of a party's household." The Honorable Court found that Mother testified credibly about Father's alcohol abuse during the marriage; that Father has not sought assistance with his significant alcohol problem; that it is "unusual for a person to have had an alcohol problem to the degree of what Mother observed during the marriage (we did find her testimony credible) and then be just fine without either an epiphany of some sort or professional assistance to conquer those demons, neither of which is in evidence instantly." Despite those findings, and despite Father's own admission during his drug and alcohol evaluation, which was admitted into evidence, that he drinks "most days," for a total of "14-28 drinks per week," the Honorable Court did not weigh this factor heavily in Mother's favor, which was in error. The Honorable Court found that because "presently", Father seems to be in control of his alcohol issue," this factor is in favor of Mother, but only slightly. Given the evidence presented, the Honorable Court erred in not weighing this factor heavily in Mother's favor.

8. The Honorable Court recognized Father's deficiencies, yet erroneously entered an Opinion advising Father on how to correct them, rather than analyzing them and weighing

4

them appropriately to determine what is in the best interest of the child. Because based on the Court's own analysis and the evidence presented, the relevant factors weigh heavily in Mother's favor, the Honorable Court erred in denying Mother's Petition to modify the custody order and failing to grant Mother primary physical custody during the school year.

(Mother's Concise Statement, 12/16/22, at 1-4). Having reviewed the relevant statutory and decisional law, we are now prepared to issue our Rule 1925(a) Statement in accordance with Pennsylvania Rule 1925(a)(2)(ii).

The Child Custody Act applies to disputes relating to child custody matters. 23 Pa. C.S.A. § 5321; *Walker v. Kress*, 2019 WL 13235541 (Butler 2019); *West v. West*, 34 D. & C.5th 427 (Berks 2013)("Actions in child custody are decided under 23 Pennsylvania Child Custody Act, 23 Pa. C.S.A. § 5321 *et* [ ] *seq.* and the decisional law that flows therefrom."). The Superior Court reviews a trial court's determination in a child custody case for an abuse of discretion, and its scope of review is broad. *W.C.F. v. M.G.*, 115 A.3d 323 (Pa. Super. 2015). As this Honorable reviewing Court explained,

> "In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court."

5

*R.L.H. v. L.C.*, 2017 WL 2704089 *5 (Pa. Super. 2017)(*quoting C.R.F. v. S.E.F.*, 45 A.3d

441, 443 (Pa. Super. 2012)(citation omitted)). The Superior Court has stated,

> "'The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.'"

*R.L.H. v. L.C.*, 2017 WL 2704089 *5-6 (Pa. Super. 2017)(*quoting Ketterer v. Seifert*, 902

A.2d 533, 540 (Pa. Super. 2006)(*quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.

Super. 2004))); *E.R. v. D.D.*, 2016 WL 1734868 *4 (Pa. Super. 2016)(*quoting Ketterer v.*

*Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006)). As the Superior Court recently explained,

> "it is not [the appellate court's] function to determine whether the trial court reached the 'right' decision; rather, [the appellate court] must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party."

*R.E. v. S.B.*, 2022 WL 6643851 *6 (Pa. Super. 2022)(*quoting King v. King*, 889 A.2d 630,

632 (Pa. Super. 2005)(citation omitted)).

> Although the Superior Court is given a broad power of review,
>
> "[it] is constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence."

6

*R.L.H. v. L.C.*, 2017 WL 2704089 *6 (Pa. Super. 2017)(*quoting M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010)(*en banc*)(quotation and citations omitted)). *See also W.C.F. v. M.G.*, 115 A.3d 323 (Pa. Super. 2015)(while prudence dictates that the Superior Court exercise its authority sparingly in a child custody case, it is not powerless to rectify a manifestly unreasonable child custody order). "'An abuse of discretion is not merely an error of judgment; if in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.'" *R.L.H. v. L.C.*, 2017 WL 2704089 *6 (Pa. Super. 2017)(*quoting Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007)(quotation omitted)).

The paramount concern in child custody cases is the best interests of the child. *C.G. v. J.H.*, 193 A.3d 891 (Pa. 2018); *R.L.H. v. L.C.*, 2017 WL 2704089 *6 (Pa. Super. 2017)( "With any custody case decided under the Act, the paramount concern is the best interests of the child."). *See also W.C.F. v. M.G.*, 115 A.3d 323 (Pa. Super. 2015)(when a trial court orders a form of custody, the best interest of the child is paramount); *S.M. v. J.M.*, 811 A.2d 621 (Pa. Super. 2002)(in a child custody matter the paramount concern of the trial court is the best interest of the child); *Alfred v. Braxton*, 659 A.2d 1040 (Pa. Super. 1995)(in matters of custody and visitation, the ultimate consideration of the court is the determination of what is in the best interest of the child). In a custody dispute, all other issues are deemed less important than the child's physical, intellectual, moral and spiritual well-being. *Dorsey v. Freeman*, 652 A.2d 352 (Pa. Super. 1994). *See also Nonnenman v. Elshimy*, 615 A.2d 799 (Pa. Super. 1992), *appeal denied*, 631 A.2d 1008 (Pa. 1993)(in matters of custody and visitation, the ultimate consideration

7

for the court is the determination of what is in the best interests of the child, and all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being).

Section 5328(a) of the Child Custody Act, 23 Pa. C.S.A. § 5321 *et seq.*, prescribes a number of factors a trial court must consider when making a custody determination. 23 Pa. C.S.A. § 5328(a); *R.L.H. v. L.C.*, 2017 WL 2704089 *6 (Pa. Super. 2017). "Trial courts are required to consider '[a]ll of the factors listed in section 5328(a) . . . when entering a custody order.'" *R.L.H. v. L.C.*, 2017 WL 2704089 *6 (Pa. Super. 2017)(*quoting J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011))(emphasis omitted). *See also K.M. v. C.L.*, 2018 WL 3213896 *6 (Pa. Super. 2018)(*quoting A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014)(*quoting J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011)(emphasis in original)))(""**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order.""); *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa. Super. 2014)(a trial court must apply the statutory child custody factors and issue a written explanation of its decision when it orders any of the seven forms of custody provided for by the Child Custody Act); *Walker v. Kress*, 2019 WL 13235541 (Butler 2019)("[T]he Child Custody Act requires the trial court to analyze the 16 Factors set forth at 23 Pa. C.S. § 5328(a) to the extent the factors are relevant.") These factors are as follows:

§ 5328. Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

8

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2)(relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

> (11)    The proximity of the residences of the parties.
>
> (12)    Each party's availability to care for the child or ability to make appropriate child-care arrangements.
>
> (13)    The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
>
> (14)    The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15)    The mental and physical condition of a party or member of a party's household.
>
> (16)    Any other relevant factor.

23 Pa. C.S.A. § 5328(a); *R.L.H. v. L.C.*, 2017 WL 2704089 *6-7 (Pa. Super. 2017). In matters of custody, a determination of what is in the best interest of the child is made on a case-by-case basis, premised upon consideration of all factors which legitimately impact the child's physical, intellectual, moral and spiritual well-being. *M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013); *Wiskoski v. Wiskoski*, 629 A.2d 996 (Pa. Super. 1993), *appeal denied*, 639 A.2d 33 (Pa. 1994). *See also Altus-Baumhor v. Baumhor*, 595 A.2d 1147 (Pa. Super. 1991)(determinations in matters of custody and visitation of what is in the best interest of a child are made on a case-by-case basis and must be premised upon the consideration of all factors which

legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being).

> As the Superior Court has instructed,

> "Section 5323(d) provides that a trial court 'shall delineate the reasons for its decision on the record in open court or in a written opinion or order.' 23 Pa. C.S.A. § 5323(d). Additionally, 'section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal.' *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

> In expressing the reasons for its decision, 'there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.' *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*R.L.H. v. L.C.*, 2017 WL 2704089 *7 (Pa. Super. 2017)(*quoting A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014). *See also W.C.F. v. M.G.*, 115 A.3d 323 (Pa. Super. 2015)(while the Child Custody Act requires a trial court to articulate the reasons for its decision prior to the filing of a notice of appeal, there is no required amount of detail; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations); *M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013)(same proposition).

As this Honorable reviewing Court will note, we filed an Opinion and Order on November 17, 2022 delineating our custody decision and the reasons therefor. Our November 17, 2022 Opinion and Order demonstrate that each of the sixteen (16) custody

11

factors were addressed therein. Consequently, we would respectfully submit that we have complied with the requirements of Section 5323(d) of the Child Custody Act, 23 Pa. C.S.A. § 5321 *et seq.* We stand by our rationale as expressed in our November 17, 2022 Opinion and Order and respectfully submit that it is supported by the facts of record and free of legal error.

All of Mother's assigned errors concern her disagreement with the amount of weight we have assigned to all relevant factors. In determining a minor child's custody, the child's best interest and permanent welfare must be decided, not in relation to a fixed standard, but by determining what is best for the child under all circumstances. *Commonwealth ex rel. Batturs v. Batturs*, 60 A.2d 610 (Pa. Super. 1948).

As this Honorable reviewing Court has stated, "It [is] within the trial court's province to weigh the . . . factors and assess the [c]hild's best interest." *J.F.M. v. C.P.*, 2016 WL 487195 (Pa. Super. 2016). The parties cannot dictate the amount of weight the trial court places on evidence. *Robinson v. Robinson*, 645 A.2d 836 (Pa. 1994)(the parties cannot dictate the amount of weight that a trial court places on evidence in making child custody determinations, but, rather, the paramount concern of the trial court is the best interests of the child); *W.C.F. v. M.G.*, 115 A.3d 323 (Pa. Super. 2015)(same proposition).

"'[I]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.'" *M.K. v. C.K.*, 2020 WL 435458 *13 (Pa. Super. 2020)(*quoting M.J.M. v. M.L.G.*, 63 A.[3d] 331, 339 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013)(citation omitted)); *K.M. v. C.L.*, 2018 WL 3213896 *12 (Pa. Super. 2018)(*quoting M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super.

12

2013))(emphasis omitted); *M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013).

"Although the court is required to give 'weighted consideration to those factors which affect the safety of the child' pursuant to 23 Pa. C.S.A. § 5328(a), [the appellate court has] acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary." *K.M. v. C.L.*, 2018 WL 3213896 *12 (Pa. Super. 2018). *See also J.G.B. v. K.G.*, 249 A.3d 1140 (Pa. Super. 2021)(same proposition); *L.F. v. B.B.*, 2019 WL 618811 (Pa. Super. 2019)(same proposition). The trial court in a custody dispute should avoid mechanical determinations and focus its analysis on a close scrutiny of all of the particular facts relevant to determining the child's best interests. *Commonwealth ex rel. Jordan v. Jordan*, 448 A.2d 1113 (Pa. Super. 1982).

In *O.B. v. C.W.B.*, 2018 WL 1887122 (Pa. Super. 2018), *appeal denied*, 191 A.3d 745 (Pa. 2018), a father objected to the trial court weighing a particular factor "slightly" in favor of mother instead of him. The father asserted on appeal that, "'It is not up to the [t]rial court to determine how to weigh the factors unless the factor is tied in some way to the child's safety.'" *Id*. The Superior Court rejected the father's argument stating, "Section 5328(a) requires that courts give weighted consideration to those factors which [a]ffect the safety of the child; however, in considering all of the relevant statutory factors for the purpose of determining the child's best interests, courts must necessarily weigh the factors between the parties, as the trial court did here." *Id*. The Superior Court affirmed the trial court's award of custody to mother. *Id*. This case teaches us that Section 5328(a) of the Child Custody Act does not delimit the court's ability to give weight to factors that are unrelated to the child's safety; that is, courts are required to give

13

weighted consideration to factors which impact the child's safety, but the court is not confined to allocating weighted consideration only to such factors.

In any custody dispute, whether the case involves two birth parents or a parent and a third party, the court's overriding concern is always to determine what will serve the best interests of the child; this question may never be subordinated to other considerations, such as fundamental rights or fair play. *Dorsey v. Freeman*, 652 A.2d 352 (Pa. Super. 1994). In child custody cases, the child's welfare is the paramount consideration, to which all other considerations, including the rights of the parents, are subordinate. *Commonwealth ex rel. Murphy v. Walters*, 392 A.2d 863 (Pa. Super. 1978). In other words, child custody matters are not to be determined by principles of justice between the two parents, but the cardinal consideration is the welfare of the child, including the child's physical, intellectual, moral, and spiritual well-being; all other factors are subordinate. *Commonwealth ex rel. Bordlemay v. Bordlemay*, 193 A.2d 845 (Pa. Super. 1963). *See also Commonwealth ex rel. Doberstein v. Doberstein*, 192 A.2d 154 (Pa. Super. 1963)(in determining custody of children, paramount question to which all other recognized policies of law as to custody are subordinated is the welfare of the children); *Commonwealth v. Kraus*, 138 A.2d 225 (Pa. Super. 1958)(birth parents' right to custody must yield to the best interests and welfare of the child). *See also Walker v. Kress*, 2019 WL 13235541 *7 (Butler 2019)("[T]he Child Custody Act does not require the trial court to consider or factor *the parties' wishes*.")(emphasis in original).

Mother seems to focus on the fact that she has historically attended more closely to the Child's activities of daily living than has Father. Although the parties have historically shared custody, even if Mother were the primary caretaker in fact, the trial

14

court is not required to give weighted consideration to a parent's historical role as the child's primary caregiver when considering the statutory factors. *T.S. v. E.R.S.*, 2016 WL 5912891 (Pa. Super. 2016). Previously, the need for continuity could be a controlling factor in a custody decision, thus placing the primary caregiver at a significant advantage in custody disputes between parents. 17 West's Pennsylvania Practice, Family Law § 28:2 (8th Ed. March 2022). However, the Child Custody Act dispenses with such presumptions; continuity is a factor, but as it does not involve the child's safety, it is not required to be accorded greater weight than any other non-safety related factor. *Id.* The court nevertheless must consider the benefits of stability and the potential harm of changing the child's primary caregiver. *Id.*

As this Honorable reviewing Court explained not too long ago,

"[T]he consideration the primary caretaker doctrine sought to address (which parent spent more time providing day-to-day care for a young child) is addressed implicitly in the enumerated factors. . . . The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry.

In short, the Legislature has created a mandatory inquiry to aid trial courts in determining the best interests of the child in a custody dispute. In doing so, it articulated the components of a parent's obligations and characteristics, and a child's needs and welfare, that must be incorporated in the trial court's custody decision where the parents are incapable of doing so. In setting forth these factors, the Legislature has **required** the trial court to give additional weight *only* to factors that it finds affect the safety of the child. This language is clear, and we cannot expand it to provide that a trial court must also give weighted consideration to a party's role as primary caretaker. We simply cannot graft the judicially-created primary caretaker doctrine on to the inquiry that the Legislature has established, and so we conclude that the primary caretaker doctrine, insofar as it required positive

15

emphasis on the primary caretaker's status, is no longer viable.'"

*J.D.D. v. M.D.*, 2016 WL 1734784 (Pa. Super. 2016)(*quoting M.J.M. v. M.L.G.*, 63 A.3d 331, 338-39 (Pa. Super. 2013)(*appeal denied*, 68 A.3d 909 (Pa. 2013)(footnote omitted)(emphasis added))(bold type added).

Part of Mother's complaint also asserts that we erred by awarding shared custody when we assessed a greater quantity of factors as favoring Mother than the quantity which we assessed to Father. In making this argument, Mother suggests that a custody determination is or should be a product of a mere tallying of the number of factors assessed in favor of each party. This argument was rejected in *G.A. v. J.S.*, 2016 WL 6534388 *11 (Pa. Super. 2016). As the Superior Court stated therein,

> "Deciding a proper custody arrangement involves more than a raw tallying of factors as Father would seem to suggest. It is clear that 'it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. . . . Therefore, even if a greater number of factors weighed in favor of Father as compared with Mother, [the trial court] would not be obligated to award custody on that basis alone."

*G.A. v. J.S.*, 2016 WL 6534388 *11 (Pa. Super. 2016)(*quoting M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013))(trial court opinion affirmed by Superior Court).

The decision in *Walker v. Kress*, 2019 WL 13235541 (Butler 2019) cogently summed up the governing law in this arena.

> Contrary to Father's assertion, the 16 Factor analysis that the Court is charged to undertake, is more than a simply tally of factors in favor or against a particular party. It requires a detailed consideration of all of the factors, with primary

16

> concern in any custody case being the best interests of the child. *E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015). "The best-interests standard, decided on a case-by-case basis, considers *all factors* that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing."... In making its analysis, the court shall determine the best interest of the child by considering *all* relevant factors, giving weighted consideration to those factors which affect the safety of the child.... But "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."... Other than those factors implicating the safety of a child, it is within the court's purview to assign the appropriate weight to determine the child's best interest. Consequently, this analysis is more than a mere mathematical formula as suggested by Father.

*Walker v. Kress*, 2019 WL 13235541 (Butler 2019). We learn from these cases that the Court has the authority to assign, in its own discretion, varying degrees of weight to the sixteen (16) factors, with the only statutory requirement being that those affecting the safety of the child be given significant weight, but without limitation as to the amount of weight to be accorded to any other particular factor or any requirement that other non-safety-related factors be weighed equally. The outcome is not a product of a sterile tally, or quantity versus quality assessment. Accordingly, Mother's argument fails.

Mother also objects to the Court's award of equally shared custody on the basis that Father's past actions have arguably been questionable in regard to his capacity to care for the Child. Specifically, concerns were raised about Father's alcohol use, his living arrangements, and his oversight of Child's hygiene.

The child custody standard of "best interests of the child" requires the Superior Court to consider the full panoply of a child's physical, emotional, and spiritual well-being and, of primary importance to that well-being is the child's full and realistic knowledge of his or her parents, except where it can be shown that exposure to the parent

17

is harmful to the child. *Blew v. Verta*, 617 A.2d 31 (Pa. Super. 1992). We must keep in mind, however, that in determining the proper custody of children, the conditions must be evaluated as they exist at the time of the custody hearing. *Brooks v. Brooks*, 466 A.2d 152 (Pa. Super. 1983). *See also Commonwealth ex rel. Gifford v. Miller*, 248 A.2d 63 (Pa. Super. 1968)(the controlling question in determining custody of child is the welfare of the child at the time of the hearing before the court and not at some former time). The decision as to custody must be made on the basis of current facts and not the past conduct of the parties. *Nancy E.M. v. Kenneth D.M.*, 462 A.2d 1386 (Pa. Super. 1983). The primary concern in custody matters lies not with the past but with the present and future; the facts as of the time of the hearing are the foundation for the determination of the court and past conduct is not relevant unless it will produce an ongoing negative effect on the child's welfare. *Commonwealth ex rel. Gorto v. Gorto*, 444 A.2d 1299 (Pa. Super. 1982). *See also Michael T.L. v. Marilyn J.L.*, 525 A.2d 414 (Pa. Super. 1987)(in a custody action, a parent's ability to care for the child is to be determined as of the time of the custody hearing, and, in making its decision, the trial court must not dwell on matters buried in the past but must concentrate only on those matters which affect the present and the future of the child); *Hartman v. Hartman*, 476 A.2d 938 (Pa. Super. 1984)(custody cannot reasonably be granted on the basis of a parent's unsettled past unless the past behavior has an ongoing negative effect on the child's welfare); *Brooks v. Brooks*, 466 A.2d 152 (Pa. Super. 1983)(parent's past emotional problems do not preclude a finding that the child's best interests require that custody be awarded to that parent); *Parks v. Parks*, 426 A.2d 108 (Pa. Super. 1981)(in custody proceedings the court should weigh the present capabilities of the parties to provide the child with a stable atmosphere and

18

not dwell on past conduct, except insofar as the child's welfare is likely to be affected); *McGowan v. McGowan*, 374 A.2d 1306 (Pa. Super. 1977)(child custody must be awarded on present conditions, rather than on consideration of past unfitness).

According to the evidence presented at trial, Father's alcohol use is within the low to moderate range, as determined by two (2) hair follicle tests he underwent, the latter one voluntarily of his own accord. (Trial Transcript, 10/5/22, N.T. 172-75). Father is very involved in Child's life physically, emotionally, and intellectually to an extent that would be difficult to manage if he was actively abusing alcohol. Our determinations that Father has curbed his alcohol consumption since his divorce and that Father's alcohol use is not at this time detrimental to his care of Child are supported by the record. *See Commonwealth ex rel. Jacobson v. Jacobson*, 124 A.2d 462 (Pa. Super. 1956)(a trial judge in a custody case may take into consideration his or her observations as to the changing physical and mental conditions of a party to the proceeding or changes in the conditions of the subject children over a period of time).

With regard to Father's living arrangements, the record indicates that Father was laid off in 2015. (Trial Transcript, 10/5/22, N.T. 179). He had to take a one-bedroom apartment, for which Mother co-signed. (Trial Transcript, 10/5/22, N.T. 80, 184). Father had a king-sized bed he would either share with Child or let Child sleep in while he slept on the couch. (Trial Transcript, 10/5/22, N.T. 71, 106, 183). To support himself, Father drove for Uber full-time until he started his own business in 2020. (Trial Transcript, 10/5/22, N.T. 179). His business has become quite profitable, with his projected earnings for the year at "well over 200,000" dollars. (Trial Transcript, 10/5/22, N.T. 140, 178-79). With the increasing prosperity of his business, Father has been able to purchase a

spacious single home with enough room to accommodate Child's needs. (10/5/22, Ex. F-1). Both parents have stable housing and provide more than adequate shelter for Child. The Court has no concern over either parent's capacity in this regard.

With respect to Child's hygiene, Mother testified that Child showers or bathes at her home every other day. (Trial Transcript, 10/5/22, N.T. 27). Father testified that the Child bathes at his home every other day or every third day. (Trial Transcript, 10/5/22, N.T. 167). The Child is an active eleven-year-old. There is no evidence that he smells when he is at school or that he has been subjected to bullying on that basis. The difference between Father and Mother in terms of the Child's hygiene is not of the magnitude that warrants a change in custody.

In short, we determined based on the record that Child's interests are best served by maintaining the 50-50 shared custody arrangement that the parties have cooperatively implemented since Child was about seven (7) years old. Child is thriving under this system. Child's grades are excellent. He is involved in extracurricular activities in both parents' care. From the testimonies of both parents, they love Child, Child loves them, they have strong bonds with Child, and neither one of them considers the other to be an incapable parent or a particular threat to Child's welfare.[1] It is true that they have different parenting styles and that Father's style does not always conform to Mother's expectations. However, the record indicates that Child is benefitting from the significant time he is able to spend with both of his beloved parents, and that his best interests lie in

---

[1] Mother sought primary physical custody only for the school year, not for the summer. If she believed Father was a threat or an incapable parent, it is doubtful she would agree to equally share custody with him for any part of the year.

20

continuing that arrangement at this time. This is why we weighed factor (a)(4), which addresses the Child's need for stability and continuity in his education, family life and community life, so heavily. It is our determination that maintaining the shared 50-50 custody arrangement between the parties will best promote the Child's need for stability and continuity in these areas. *See E.A.L. v. L.J.W.*, 662 A.2d 1109 (Pa. Super. 1995)(the stability the child has enjoyed in a long-standing custody arrangement and the happy relationship the child has developed with his or her parent(s) or others may be a decisive factor in a custody decision); *Gerber v. Gerber*, 487 A.2d 413 (Pa. Super. 1985)(in a custody decision, the court must consider the importance of continuity in the child's life and the desirability of the development of a stable relationship with established parental figures and the known physical environment); *Witmayer v. Witmayer*, 467 A.2d 371 (Pa. Super. 1983)(continuity and stability are important elements in a young child's emotional development and are elements that must be recognized in making a child custody award in a divorce proceeding); *Boland v. Leska*, 454 A.2d 75 (Pa. 1982)(in deciding who should have custody of a child, it is always essential to consider how long the child has spent with each of the parties). In our opinion, maintaining this historical arrangement strongly advances the best interests of the Child, our paramount concern. *W.C.F. v. M.G.*, 115 A.3d 323 (Pa. Super. 2015)(the paramount concern of the trial court is the best interest of the child). It happens that our determination coincides with Father's position.

As this Honorable reviewing Court has observed, appellate interference in a child custody case is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and the appellate court is unable to find any abuse of discretion. *W.C.F. v. M.G.*, 115 A.3d 323 (Pa. Super. 2015). The test in a custody case

is whether the evidence of record supports the trial court's conclusions. *Id.* We would respectfully submit that our decision to maintain the parties' 50-50 shared legal and physical custody arrangement is supported factually by the competent evidence of record and our conclusions are reasonable in light thereof and free from legal error. We would respectfully submit that we did not abuse our discretion by awarding 50-50 shared legal and physical custody to these parties. Mother's arguments to the contrary are not supported by the competent facts of record nor are they representative of the applicable law. Accordingly, we would respectfully request that this Honorable reviewing Court deny and dismiss Mother's appeal and affirm the undersigned's November 17, 2022 Opinion and Order awarding 50-50 shared legal and physical custody to the parties.

BY THE COURT:

_____ 1/17/23
Date

_____
Allison Bell Royer,                                                           J.